**CHROMCRAFT CORPORATION,**
**Petitioner,**

v.

**UNITED STATES EQUAL EMPLOY-**
**MENT OPPORTUNITY COMMIS-**
**SION, Respondent.**

**No. DC 7155–K.**

United States District Court,
N. D. Mississippi,
Delta Division.

Jan. 6, 1972.

**654**

Nat Troutt, Senatobia, Miss., Carl S. Downing, New Orleans, La., for petitioner.

A. C. Wharton, Jr., E.E.O.C., Washington, D. C., Charles A. Dixon, E.E.O. C., Memphis, Tenn., for respondent.

## MEMORANDUM OPINION

KEADY, Chief Judge.

This proceeding arises upon the petition of Chromcraft Corporation, petitioner, timely instituted pursuant to 42 U.S. C. § 2000e–9(c), to modify or set aside the demand for evidence of the United States Equal Employment Opportunity Commission (EEOC), and respondent's answer and cross-petition for enforcement of its administrative subpoena.

The relevant facts may be briefly summarized. Petitioner transacts business as a manufacturing plant located at Senatobia in Tate County, Mississippi, and is an employer subject to Title VII of the Civil Rights Act of 1964. On April 1, 1969, Jewel Madlock, a black resident of Sardis, as the charging party, stated under oath that petitioner, as recently as April 1, 1969, had discriminated against her, alleging that "Chromcraft refused to hire me and numerous other Negroes because of our race." This charge was filed on April 11, 1969, with EEOC at its Memphis Area Office. Over one year later, on April 17, 1970, EEOC served a copy of the charge upon petitioner; this was petitioner's first notification that it was charged by Jewel Madlock with an unlawful employment practice.

Seven days later, on April 24, 1970, petitioner responded to EEOC by advising that its records, which consisted of a security gate log and employment applications, had been checked for April 1, 1969, for a substantial period of time prior to that date and for one year subsequent thereto, and they failed to show that Mrs. Madlock was at any time an applicant for employment at its plant. Petitioner advised that Mrs. Madlock since February 12, 1970, had been employed at Sardis Luggage Company, against whom she had made a similar Title VII charge on March 6, 1968, and also that she made a charge against U. S.

Industries of Batesville, Mississippi, on February 12, 1968. Madlock v. Sardis Luggage Co., and Madlock v. U. S. Industries, 302 F.Supp. 866 (N.D.Miss. 1969).[1] Petitioner requested that EEOC limit any investigation it might initiate to a preliminary determination of whether the charging party ever actually applied to it for employment. Petitioner invited comment from EEOC as to this procedure, stating that if an investigation should disclose that an application was made, "we will then consider making available such other information as may be relevant to such charge."

EEOC made no response to this letter, nor did it make demand of any sort upon petitioner until June 14, 1971, or more than 13 months thereafter, when it served petitioner with a formal demand for access to evidence. The next day, June 15, petitioner wrote EEOC objecting to the "constant lack of timeliness in the Commission's handling of this matter to date," and emphasizing its disadvantage in defending the Title VII charge because of delay. Again petitioner proposed that EEOC's investigation be limited to determining whether Mrs. Madlock sought to apply for employment and was prevented from doing so by petitioner's discriminatory practice. Upon EEOC's failure to respond to its twice-made proposal, petitioner on July 2, 1971, within the 20-day statutory limitation period, filed its petition in this court.

Charles A. Dixon, Deputy Director of EEOC's Memphis Area Office, by affidavit, has advised the court of the workload of his office, stating that in April 1969 there were 333 pending charges of discrimination, with new charges being filed at the rate of 75 monthly, that by April 1970 the pending charges rose to 810, with 100 new filings each month; and that its staff to handle these charges consisted of first 10 and later 19 officers. Mr. Dixon expressed the view that "the service of Charge No. TME 9–0509 [the one in issue] was conducted in the most expeditious manner feasible, given the limited manpower and enormous workload then prevalent at the Memphis district office."

Aside from the usual objections to the scope of the demand which are based on the lack of relevancy and need, burdensomeness and unavailability of the information sought, petitioner interposes two serious challenges to the enforceability of EEOC's subpoena: First, the failure of EEOC to serve petitioner with the charge for more than one year and then refusing to pursue its investigation for 26 months prohibits respondent from now conducting a Title VII investigation; and second, respondent is not proceeding on a charge filed by a person "aggrieved" as required by § 2000e–5(a) because the limited investigation proposed by petitioner would establish that Mrs. Madlock, as charging party, had not in fact applied for employment as she alleged. EEOC attempts to counter the first challenge by asserting that its delay in serving the charge upon petitioner is excusable and petitioner has not been prejudiced thereby. As for the second challenge, EEOC submits that its authority to investigate arises under the very words of the statute (42 U.S.C. § 2000e–5(a)) whenever there is filed with it a charge "in writing under oath by a person *claiming* to be aggrieved", regardless of whether or not the claim may be well founded, and that anyone who fills out and submits an EEOC form indicating another party is guilty of a discriminatory employment practice is "claiming to be aggrieved within the statutory meaning of Title VII," as held recently by the Fourth Circuit in Graniteville Co. v. EEOC, 438 F.2d 32. This decision supports EEOC's basic position and is also authority for the proposition that 42 U.S.C. § 2000e–9(a), the statutory authority for

---

1. Jewel Madlock filed actions in United States District Court against both companies on January 30, 1969. In *Sardis Luggage* a consent order of settlement was entered on January 22, 1971; the other case is still pending in this court.

production of evidence upon EEOC's demand, makes relevancy and materiality of the evidence sought—and not reasonable cause—the only issues pertinent in the context of such a proceeding.[2]

■ Petitioner's first challenge, however, presents an issue of concern important to both EEOC and employers alike and which calls for a construction of Title VII. The Act specifically provides that EEOC "shall furnish such employer [i. e., one who has been charged in writing with having engaged in an unlawful employment practice] with a copy of such charge and shall make an investigation of such charge, provided that such charge shall not be made public by the Commission." § 2000e–5(a). A charging party must file the charge with EEOC within 90 days from the date of the alleged unlawful employment practice, § 2000e-5(d); and EEOC is allowed 60 days within which to obtain voluntary compliance, failing which EEOC shall notify the aggrieved person in order that he, if he wishes, may bring a civil action against the respondent named in the charge, § 2000e–5(e). The Act itself prescribes no precise time within which a respondent must be served a copy of the charge. Nevertheless, the clear duty of EEOC to act promptly and seasonably may be implied from, if not expressly spelled out by, its own regulations.[3]

■ We conclude that while the charge need not necessarily be served within 60 days after its filing as EEOC's regulations may indicate at first blush, the statute does require that EEOC serve the charge upon a respondent within a reasonable time after its receipt from a charging party.

The Fifth Circuit, in Georgia Power Company v. EEOC, 412 F.2d 462 (1969), clearly indicated that a valid concern under Title VII is that EEOC may not give a charged party notice of a pending charge within a reasonable time. Judge Gewin, in writing for the court, made this pertinent observation in Footnote 10:

"We therefore infer that service of the charge must be made within a rea-

---

2. The *Graniteville* Court expressly so held in these words:

"The EEOC is correct in its position that, in the context of Demand enforcement proceedings, 'Title VII contains no provision authorizing a general inquiry into the sufficiency of the evidence supporting a charge,' as the court below undertook in this case . . . In conducting hearings into the aggrieved status of the charging party the court required the EEOC to make a reasonable cause showing as a prerequisite to enforcement of the Commission Demand issued in the course of an investigation designed to determine the existence of reasonable cause. That is not only to place the cart before the horse, but to substitute a different driver for the one appointed by Congress. The statutory standard to be applied in a Demand enforcement proceeding is one of relevancy and materiality, not one of reasonable cause to believe the charge is true. 42 U.S.C. § 2000e–9(a)." at p. 36

3. 29 CFR § 1601.13 Service of charge.
Upon the filing of a charge or the amendment of a charge, the Commission shall furnish the respondent with a copy thereof by certified mail or in person.

§ 1601.25. Notice to respondent and aggrieved person.
In any instance in which the Commission is unable to obtain voluntary compliance as provided by Title VII it shall so notify *the respondent* and the aggrieved person or persons. Notification to an aggrieved person shall include:
(a) A copy of the charge.
(b) A copy of the Commission's determination of reasonable cause.
(c) Advice concerning his right to proceed in court under section 706(e) of Title VII.

§ 1601.25a Processing of cases; when notice issues under § 1601.25.
(a) The time for processing all cases is extended to sixty (60) days except insofar as proceedings may be earlier terminated pursuant to § 1601.19d [upon a finding of no reasonable cause].

＊　＊　＊　＊　＊

(c) At any time after the expiration of sixty (60) days from the date of the filing of a charge, . . . the charging party or *the respondent* may demand in writing that a notice issue pursuant to § 1601.25, and the Commission shall promptly issue such notice, with copies to all parties.

sonable time after receipt by the EEOC. . . . It may be noted, however, that determination of reasonableness is an ad hoc matter; thus the EEOC would be well advised to furnish the charged party with a copy of the original charge immediately with the notation that a formal charge will be forthcoming."

The foregoing language was used in the context of a case where the formal, sworn charge was served upon the charged party within 7 days after its receipt by EEOC, although this was 86 days following EEOC's receipt of an unsworn, handwritten letter making the same charge of discrimination. It was only because the Court found "In the circumstances of this case, we think that the EEOC acted with reasonable diligence," that the complaint of Georgia Power Company that the charge was not timely served upon it was rejected. EEOC contends that this footnote is obiter dictum and contrary to prior Title VII jurisprudence which has consistently refused to penalize *the charging party* for the faults of the Commission, relying upon such Fifth Circuit cases as Dent v. St. Louis-San Francisco RR Co., 406 F.2d 399 (1969), conciliation by EEOC is not jurisdictional prerequisite to civil action by charging party; Miller v. International Paper Co., 408 F.2d 283 (1969), EEOC's action or inaction cannot affect grievant's substantive rights; Beverly v. Lone Star Lead Construction Co., 437 F.2d 1136 (1971), EEOC's finding of absence of reasonable cause for discrimination is no bar to suit by charging party; and this court's own holding, Johnson v. ITT–Thompson Industries, Inc., 323 F.Supp. 1259 (N.D. Miss.1971), failure of EEOC to serve the company with the charge does not bar suit by aggrieved party. EEOC argues that the same considerations which have guided the courts, in protecting the substantive rights of charging parties, to view administrative lapses as inconsequential should also apply to EEOC because the rights of charging parties are no less involved where administrative remedies are invoked than in court litigation. EEOC thus suggests that any interpretation of Title VII that imposes a duty upon it to serve the charge upon the named respondent within a reasonable time after receipt would militate against resolving discrimination disputes through voluntary compliance, thereby thwarting a primary goal of the Act, and would encourage the parties to resort to the courts at the earliest possible date.[4]

None of EEOC's arguments persuades us that it should be relieved of the duty of acting with reasonable diligence in serving the charge. Given its heavy workload and limited manpower, which almost assure many months' delay in investigations, EEOC's laudable role in voluntary conciliation clearly would be promoted by requiring the charge to be served within a reasonable time after receipt from an aggrieved party. This would be calculated in many cases to encourage amicable, quick settlements by employers upon their being informed of the pendency of a discrimination charge before a federal agency. Certainly, we do not understand how concealing for a period of many months from an employer that he is charged with discrimination may improve the chances of voluntary compliance being secured by an overworked governmental agency. Indeed, the same reasoning which moved Congress to limit a charge of discrimination by an aggrieved party to practices occurring within 90 days from the date of its filing with EEOC supports a requirement that EEOC itself should act as soon as practicable, and certainly

---

4. It has been elsewhere suggested that EEOC's practice is to delay service of the charge until investigation begins "because immediate service of the charge, followed by the long interval before investigation, creates the possibility of reprisal against the charging party." 84 Harv.L.R., p. 1209, Developments—Title VII. The same article affirms that it takes EEOC a minimum of 18 months to 2 years to process a charge of discrimination.

within a reasonable time, in notifying a respondent of the charge. Ordinarily, the service of a charge imposes small, if any, administrative burden upon EEOC, since it involves no more than reproducing a brief document and mailing it to a known party. Yet, receipt of the charge by a respondent, where service is made within a reasonable time after its filing, is of both concern and value to the employer, for the information therein contained affords an opportunity to assay the claim's genuineness and validity before the dulling of memories, changes in personnel, or the other loss or obscuring of evidence occasioned simply by the passage of a considerable period of time beyond the event or events forming the basis of the charge. The present case clearly suggests that petitioner would have been in better position to know the facts underlying the Madlock claim had it been earlier notified that it was pending. In the light of stringent remedy provided by Congress in § 704,[5] the possibility of reprisal or prejudice to an aggrieved party, resulting from service of the charge within a reasonable time, is remote and such fears are unfounded.

■ We are, therefore, unable to perceive that the Act makes service of the charge a constituent part of the investigation or that service may be deferred until a long-delayed investigation has begun. On the contrary, § 706(a) clearly contemplates that serving the charge upon the named respondent must *precede* the investigation, and while the charge must be kept confidential from the public, it may not be kept confidential from the respondent. Certainly, § 706(a) makes no provision for the Commission to defer service of the charge beyond a reasonable time after receipt, as may be dictated by the circumstances of each case. Finally, the fact that courts, out of a recognition of the Act's stormy legislative history, have refused

to allow substantive rights of Title VII plaintiffs to be impaired or adversely affected by the shortcomings or omissions of the administrative process can hardly justify the placing of a premium upon agency slothfulness by excusing EEOC from timely performing a simple but significant requirement imposed by Congress.

■■ This brings us to the question of whether in the instant case EEOC's delay of more than one year after receiving the charge before serving it upon petitioner is acting within a reasonable period of time. As Judge Gewin stated in *Georgia Power Company*, reasonableness is an ad hoc matter, to be determined on the facts of each case. Here we note that Mrs. Madlock's charge, which she executed under oath on April 1, 1969, and promptly filed ten days later with EEOC, was never amended or subsequently altered. The original charge was complete as to every essential element; it does not appear that EEOC agents undertook to make any suggestions, corrections or additions to the charge as filed. The court is given no explanation for the year's delay in serving Mrs. Madlock's charge upon petitioner. EEOC's officials attempt to equate service of the charge with a commencement of its investigation, which was no doubt justifiably delayed because of the undisputed workload and overburdened staff. But we construe service of the charge to be an act separate and distinct from any investigation that may ensue. Since EEOC failed to show why it was not feasible to serve upon petitioner a copy of Mrs. Madlock's charge as soon as practicable after its receipt, we conclude on these facts that EEOC failed to act with reasonable diligence, thus violating its duty to serve the charge within a reasonable period of time and barring it from now demanding evidence from the petitioner. We

5. 42 U.S.C. 2000e–3(a) provides:
"It shall be an unlawful employment practice for an employer to discriminate against any of his employees or applicants for employment . . . *because*

*he has made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this subchapter."* (Emphasis added)

find it unnecessary to consider whether the petitioner was in fact prejudiced by the year's delay inasmuch as Mrs. Madlock's substantive rights, as the aggrieved party, could in no way be affected by the circumstance that the petitioner remained ignorant of her charge until April 17, 1970.  Johnson v. ITT-Thompson Industries, Inc., supra.

For the foregoing reasons, the petition to set aside the demand for evidence will be sustained, and an order will be entered accordingly.