**CHROMCRAFT CORPORATION,**
Petitioner-Appellee,

v.

**UNITED STATES EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Respondent-Appellant.**

No. 72-1742
Summary Calendar.*

United States Court of Appeals,
Fifth Circuit.

Aug. 2, 1972.

---

* Rule 18, 5 Cir.; see Isbell Enterprises, Inc. v. Citizens Casualty Company of New York, et al., 5 Cir. 1970, 431 F.2d 409, Part I.

John de J. Pemberton, Jr., Acting Gen. Counsel, A. C. Wharton, Jr., Atty., EEOC, Washington, D. C., Julia P. Cooper, Chief, Appellate Section, EEOC, Washington, D. C., for respondent-appellant.

Carl S. Downing, New Orleans, La., Nat G. Troutt, Senatobia, Miss., Julian R. Murray, Jr., Kullman, Lang, Inman & Bee, New Orleans, La., Troutt & Moore, Senatobia, Miss., for petitioner-appellee.

Before JOHN R. BROWN, Chief Judge, and GOLDBERG and MORGAN, Circuit Judges.

JOHN R. BROWN, Chief Judge:

■ The EEOC appeals from a District Court order, 337 F.Supp. 653, set-ting aside the Commission's demand for production of evidence for use in an investigation of Title VII charges filed against the Company. The District Court's order followed a finding that the EEOC had not served the Company with notice of the pending charges within a reasonable time. We reverse.

On April 1, 1969, the Complainant filed a formal charge of prohibited race discrimination against the Company. At that time the regional office of the EEOC had a backlog of 333 pending charges of discrimination, with new filings averaging 75 per month. Consequently, it was over a year before one of the officers could begin an investigation of the charge. In accordance with Commission policy aimed at minimizing reprisals against complainants during this unfortunate but unavoidable hiatus, the Commission did not serve notice of the charge on the Company until an EEOC officer was available to begin the investigation—April 11, 1970. The Company objected to the investigation proposed by the Commission and accordingly a formal Demand was issued pursuant to 42 U.S.C.A. § 2000e-9(a). Within the 20 days proscribed by § 2000e-9(c), the Company instituted the present suit in the United States District Court seeking to modify or set aside the Commission's Demand for Access to Evidence.

■ At the time this action was commenced there was no statutory or regulatory provision establishing a time limitation within which an employer must have been served with a copy of the complaint.[1] Nor is the equitable doctrine of laches applicable to a governmental agency acting to vindicate a public right.[2] In fact, the only applicable

---

1. Sections 706(b) and (e) of Title VII as amended by P.L. 92–261, effective March 24, 1972, now provide that notice of a charge filed with the EEOC must be served upon the person against whom the charge is made within 10 days of the filing.

2. See Jacksonville Paper Co. v. Tobin, 5 Cir., 1953, 206 F.2d 333; United States

v. Summerlin, 1940, 310 U.S. 414, 416, 60 S.Ct. 1019, 84 L.Ed. 1283, United States v. Thompson, 1879, 98 U.S. 486, 25 L.Ed. 194; United States v. Nashville, C. & St. L. Ry. Co., 1886, 118 U.S. 120, 125–126, 6 S.Ct. 1006, 30 L.Ed. 81; Stanley v. Schwalby, 1893, 147 U.S. 508, 514–515, 13 S.Ct. 418, 37 L.Ed. 259; Chesapeake & Delaware Canal Co. v. United States, 1919, 250 U.S. 123, 124–

statutory provision even tangentially touching upon this area of EEOC activity is that implicitly encompassed, in the Administrative Procedure Act, 5 U.S.C.A. § 706.[3]

■ Section 706 *limits* judicial review of agency action and, in the absence of some other limitations provision, empowers federal courts only to "compel agency action unlawfully withheld or unreasonably delayed." Here the employer seeks a nullification of the agency action, not a court order compelling such action. Moreover, even were we to assume that this provision creates mandatory duties on administrative agencies sufficient to set aside agency action as unlawful if "unreasonably delayed," § 706 further requires that the reviewing court shall take due account "of the rule of prejudicial error." We read that Congressional mandate to require a showing of prejudice before agency action can be set aside for its lack of punctuality. Here no such showing of prejudice has been made.

Moreover, even if some prejudice—as yet unshown—might later surface or be demonstrated, no different result would follow since the District Court's conclusion that the EEOC acted unreasonably cannot be sustained. In the first place, the delay in investigating charges[4] is clearly, as the District Court found, the result of an "undisputed workload and

125, 39 S.Ct. 407, 63 L.Ed. 889; Phillips v. Commissioner of Internal Revenue, 1931, 283 U.S. 589, 602–603, 51 S.Ct. 608, 75 L.Ed. 1289; Guaranty Trust Co. v. United States, 1938, 304 U.S. 126, 132, 58 S.Ct. 785, 82 L.Ed. 1224; Board of Commissioners of Jackson County v. United States, 1939, 308 U.S. 343, 351, 60 S.Ct. 285, 84 L.Ed. 313; United States v. Thomas, 5 Cir., 1939, 107 F.2d 765.

"The rule *nullum tempus occurrit regi*— the statute of limitations does not run against the sovereign—is explained historically as a vestige of the privileges of the English king. Guaranty Trust Co. of New York v. United States, 304 U.S. 126, 132, 58 S.Ct. 785, 82 L.Ed. 1224 (1938). Its survival in this country has been attributed to the policy that the public interests should not be prejudiced by the negligence of public officers. United States v. Nashville, C. & S. L. Ry., 118 U.S. 120, 6 S.Ct. 1006, 30 L.Ed. 81 (1886); United States v. Thompson, 98 U.S. 486, 25 L.Ed. 194 (1878). As recently as 1940 the Supreme Court termed the exemption of the United States from the bar of statutes of limitations or from the defense of laches a 'well settled' rule of law. United States v. Summerlin, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940). We are bound by this rule, and the appellants recognize that we are." United States v. 93 Court Corp., et al., 2 Cir., 1965, 350 F.2d 386, 388.

Further, "without a clear manifestation of Congressional intent, the United States is not bound by state statutes of limitations or subject to the defense of laches in enforcing its rights." United States v. Essley, 10 Cir., 1960, 284 F.2d 518, 521.

3. To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

(A) arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law;

(B) contrary to constitutional right, power, privilege, or immunity;

(C) in excess of statutory jurisdiction, authority, or limitations, or short of statutory right;

(D) without observance of procedure required by law;

(E) unsupported by substantial evidence in a case subject to sections 556 and 557 of this title or otherwise reviewed on the record of an agency hearing provided by statute; or

(F) unwarranted by the facts to the extent that the facts are subject to trial de novo by the reviewing court.

In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.

4. Nationwide, it takes the EEOC a minimum of eighteen months to two years to process a charge of discrimination on account of the burgeoning caseload. See Developments—Title VII, 84 Harv.L.R. 1109.

an overburdened staff," [5] and there is not any suggestion that it has resulted from slothfulness, lethargy, inertia or caprice. This Court is only too painfully aware of the inescapable backlog which inevitably develops when exploding dockets exhaust severely limited resources which are not increased in proportion to the ever-expanding demands and inundating filings. In the setting of such exacerbated circumstances, "agencies must exert the greatest resourceful, imaginative ingenuity in devising procedures which in a day of ever-expanding dockets will permit the regulatory process to function *properly* with reasonable dispatch." F.T.C. v. J. Weingarten, Inc., 5 Cir., 1964, 336 F.2d 687, 691–692. (Emphasis added.)

Given an inevitable and sizeable backlog, and the David-Goliath nature of the confrontation between "a single poor, ignorant employee with a grievance, not a sling shot in his hand, [and] a large industrial employer," [6] the EEOC sought ways to minimize the possibility of employer reprisals against charging employees during the hiatus before the Commission could actively begin its investigation. Having been given no direct statutory power to invoke judicial assistance to protect private complainants during this period of limbo,[7] the EEOC had to resort to other means to satisfy its statutory obligation to protect congressionally created rights. One technique intended to accomplish this objective was the policy involved here— the procedure of not serving the charges upon the respondent until the investigation was imminent. Whether or not that policy was successful, desirable or wise, we need not—indeed cannot—determine here. So long as the policy "seeks only to accomplish legitimate objectives," Cf. Karr v. Schmidt, 5 Cir. (en banc), 1972, 460 F.2d 609, 617, we cannot declare it unreasonable. The District Court substituted his judgment for that of the administrative agency statutorily vested with the discretion and possessed of the experience-gained expertise to determine the most efficacious procedure for affecting the Act's goals.[8] In the absence of proof of a dilatory attitude on the part of the Commission or its staff, this was error.

The EEOC's policy, motivated as it was by fears of destructive reprisals, did not result in *unreasonable* delay.

5. By the time the investigation was to commence in the present case the regional office of the EEOC had a backlog of 810 pending charges with new filings averaging 100 per month. Its staff to handle these charges consisted of 19 officers.

6. Pettway v. American Cast Iron Pipe Co., 5 Cir., 1969, 411 F.2d 998, 1005; Jenkins v. United Gas Corp., 5 Cir., 1968, 400 F.2d 28, 33; Sanchez v. Standard Brands, Inc., 5 Cir., 1970, 431 F.2d 455, 467.

7. See, e. g., EEOC v. Woolco Department Store, E.D.La., 1971, 321 F.Supp. 811, rev'd, 5 Cir., 1972, 460 F.2d 301 [1972]. The *Woolco* case typifies the dilemma the EEOC faced before the 1972 amendments to Title VII. There the EEOC sought injunctive relief to protect witnesses against retaliatory firings resulting from their participation in its investigation. The District Court held that the EEOC was impotent to prosecute such actions, despite a holding that one employee had been arbitrarily discharged "in apparent retaliation for his having filed a charge with the Commission, and also that two other employees of the defendant refused to sign affidavits or testify at any of the Commission's hearings for *fear of reprisal.*" (Emphasis added). While the case was pending on appeal before this Court, Congress passed P.L. 92–261 (see note 1, *supra*) and we remanded the case for reconsideration in view of the new law.

8. The District Court's memorandum opinion states, "Given its heavy workload and limited manpower, which almost assure many months' delay in investigations, EEOC's laudable role in voluntary conciliation clearly would be promoted by requiring the charge to be served within a reasonable time after receipt from an aggrieved party. This would be calculated in many cases to encourage amicable, quick settlements by employers upon their being informed of the pendency of a discrimination charge before a federal agency." The EEOC disagrees, asserting that its experience has taught it that immediate service of a complaint with an investigation not yet in sight results in far more deleterious consequences than the District Court perceived.

Cf. Georgia Power Co. v. EEOC, 5 Cir., 1969, 412 F.2d 462; International Brotherhood of Electrical Workers, Local Union No. 5 v. EEOC, 3 Cir., 1968, 398 F.2d 248.[9] Accordingly, the order of the District Court setting aside the Commission's Demand for Access to Evidence is reversed and the case is remanded to the District Court for a further action consistent with the principles herein enunciated.

Reversed and remanded

9. "It must be borne in mind that the prime duty of the EEOC is to investigate and conciliate. We perceive no time limitation imposed by the Equal Employment Opportunities Act or the regulations of the EEOC by which a charge must be served and proceeded with by the Commission. Cf. Sections 709(a) and 710(a), 42 U.S.C.A. §§ 2000e–8 and 2000e–9. In this respect the Equal Employment Opportunities Act seems similar to the National Labor Relations Act. The National Labor Relations Board, aside from the restriction it may not act upon a charge filed with it later than six months after the occasion of the alleged unfair labor practice, seems untrammeled as to any period of time in which it may make an investigation of a charge."