**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

v.

**BELL HELICOPTER COMPANY and Local 218, United Automobile Workers.**

Civ. A. No. CA 4-75-249.

United States District Court, N. D. Texas, Fort Worth Division.

Dec. 6, 1976.

---

Sylvian R. Roybal, Trial Atty., EEOC, Denver Regional Litigation, Denver, Colo., for plaintiff.

Beale Dean, Brown, Herman, Scott, Dean & Miles, Fort Worth, Tex., for Bell Helicopter.

Catherine C. Harris, Youngdahl & Larrison, Little Rock, Ark., for United Automobile.

## MEMORANDUM AND ORDER

MAHON, District Judge.

There is now before the Court the "Motion to Dismiss and/or for Summary Judgment, and for a Stay of Proceedings" filed by Defendant Bell Helicopter Company [hereinafter "Defendant Bell"] on 18 November 1975. After thorough briefing by both Defendant Bell and Plaintiff Equal Employment Opportunity Commission [hereinafter "EEOC" or "Commission"], a hearing on oral argument was held on 11 May 1976. After this hearing, and while Defendant Bell's motion was still pending before the Court, this Court became aware of the recent decision in *EEOC v. Moore Group, Inc.*, 416 F.Supp. 1002 (N.D.Ga.1976). Considering the *Moore Group* decision to be particularly relevant to this proceeding, the Court, on 8 October 1976, ordered new briefs on the issues raised in that case. Both parties have now filed those supplemental briefs.[1]

### I.

### THE NATURE OF THE CASE

In its complaint, the EEOC has charged Defendant Bell with violating Title VII of

---

1. The Court would like to take this opportunity to note the excellence of the briefs filed by both parties. This case presents a particularly difficult issue of law; the high quality of both the legal analyses and the arguments of the parties has greatly aided the Court in determining the issues raised by Defendant Bell's motion and in reaching its final decision.

the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et seq.* [hereinafter "the Act"], by intentionally engaging in the following practices at Bell's facility in Hurst, Texas:

(1) Discriminating against females because of their sex by failing to treat maternity benefits on the same basis as it treats other temporary disabilities;

(2) Discriminatorily discharging Spanish-surnamed Americans because of their national origin;

(3) Failing to hire Negroes and Spanish-surnamed Americans because of their race and national origin;

(4) Failing to promote Negroes and Spanish-surnamed Americans because of their race and national origin;

(5) Discriminating against Negroes and Spanish-surnamed Americans because of their race and national origin by initially assigning them to low paying and low classified jobs and thus denying them equal employment opportunities; and

(6) By allowing its officials to use derogatory language against Spanish-surnamed Americans and thus denying them equal terms and conditions of employment because of their national origin.

The EEOC has prayed for injunctive relief prohibiting these alleged discriminatory practices, injunctive relief requiring nondiscriminatory practices, "make-whole" relief (back pay, etc.), any and all other equitable relief to which it might be entitled, and its costs of action.

Local 218, United Automobile Workers [hereinafter "Defendant Local"], was named as a Defendant by the EEOC pursuant to Fed.R.Civ.Proc. Rule 19(a)(2) "in that it has an interest in the outcome of this action by being a signatory to a collective bargaining agreement with the Company at its Hurst facility."

Defendant Local has answered by stating that it is of the opinion that Defendant Bell has engaged in discriminatory practices at its Hurst, Texas, facility, but that Defendant Local has taken no part in such practices, that it has no control over those practices, and that it has fairly represented all minority groups in collective bargaining and grievance procedures.

## II.

### ISSUES NOW BEFORE THE COURT

In its motion to dismiss and/or for other relief, Defendant Bell has claimed that all charges of discrimination against it, except for those concerning maternity benefits, date from the period of 1966 to 1968. Defendant Bell therefore has claimed that the 1966–1968 charges are barred by laches. On supplemental briefing in light of *Moore Group, supra,* 416 F.Supp. 1002, Defendant Bell has claimed that the 1966–1968 charges should also be dismissed for inexcusable delay under the Administrative Procedure Act. The EEOC, of course, opposes dismissal on either ground.

With regard to the recent maternity benefits charges, the parties had originally agreed that that aspect of this suit should be stayed pending the outcome in the Supreme Court of *Wetzel v. Liberty Mutual Ins. Co.,* 511 F.2d 199 (3d Cir. 1975), *cert. granted,* 421 U.S. 987, 95 S.Ct. 1989, 44 L.Ed.2d 476 (1975). *Wetzel* however, was subsequently decided by the Supreme Court on procedural grounds. 424 U.S. 737, 96 S.Ct. 1202, 47 L.Ed.2d 435 (1976). The parties have now agreed to stay the maternity benefits aspect of this suit until the Supreme Court reaches a decision in *Gilbert v. General Electric Co.,* 519 F.2d 661 (4th Cir. 1975), *cert. granted* 423 U.S. 822, 96 S.Ct. 36, 46 L.Ed.2d 39 (1975), which presents a substantially identical issue of law. *Gilbert* is still pending before the Supreme Court, Nos. 74–1589 & 74–1590, and has been reargued this term. 45 U.S.L.W. 3296 (19 October 1966).

## III.

### LACHES

There are four recent decisions by the Fifth Circuit on the issue of the applicability of laches to suits brought by the EEOC: *Chromcraft Corp. v. EEOC,* 465 F.2d 745

(5th Cir. 1972); *United States v. Georgia Power Co.,* 474 F.2d 906 (5th Cir. 1973); *EEOC v. Griffin Wheel Co.,* 511 F.2d 456 (5th Cir. 1975); and *EEOC v. Exchange Security Bank,* 529 F.2d 1214 (5th Cir. 1976). These decisions are at best ambiguous, and this Court has had great difficulty in reconciling their language. A great deal of the problems created by these cases arise from the fact that they all involve the injection of unnecessary dicta into the substantive decisions of the court.

In *Chromcraft, supra,* 465 F.2d 745, *rev'g* 337 F.Supp. 653 (N.D.Miss.1972), the EEOC demanded production of certain evidence pertaining to matters that had been originally sought over a year before, on a charge of discrimination that had been filed with the Commission one year prior to the original request for information. The district court, relying on dictum in the Fifth Circuit's first opinion in *Georgia Power,* 412 F.2d 462, 467 & n. 10 (5th Cir. 1967), set aside the demand for production on the ground that the Act itself required service upon a respondent within a reasonable time after the receipt of the charge by the EEOC.

Despite the fact that the district court decision was not based on the doctrine of laches, in *Chromcraft,* the Fifth Circuit stated: "Nor is the equitable doctrine of laches applicable to a governmental agency acting to vindicate a public right." 465 F.2d at 746. While dictum, this statement is supported by a note listing exhaustive indisputable authority—Supreme Court and Court of Appeals decisions—tracing this rule back to the old English doctrine of *nullum tempus occurrit regi.* 465 F.2d at 746–747 n. 2.

In *Georgia Power, supra,* 474 F.2d 906, an appeal from a final judgment in an employment discrimination suit, the Court held that back pay was available in a suit brought by the United States. In discussing limitations on the recovery of back pay, the Court stated:

Where the government is suing to enforce rights belonging to it, state statutes of limitation are not applicable. . . .

However, . . . [i]nsofar as the pattern or practice suit constitutes a proper legal conduit for the recovery of sums due individual citizens rather than the treasury, it is a private and not a public action. . . . These personal claims are entitled to no superior status because they are here allowed to be asserted in the Attorney General's suit as well as in the private class action.

474 F.2d at 923. As far as back pay relief is concerned, the Court held that the general rule in private actions of borrowing the state statute of limitations applied. Then, after determining which Alabama statute of limitations applied, the Court added the following dictum:

Additionally, as is true with regard to wholly equitable actions, the doctrine of laches is applicable to such monetary awards.

474 F.2d at 923.

In *Griffin Wheel,* the Fifth Circuit reiterated the distinction between back pay relief, which it deemed a private action, and equitable relief, which it deemed a public action. That Court, however, then went further, in dictum, to cite *Georgia Power* for the proposition that the doctrine of laches would "remain" applicable even in suits where the state statutes of limitation were not applicable. 511 F.2d at 459 & n. 5.

Finally, in *Exchange Security Bank, supra,* 529 F.2d at 1214, in which the EEOC was attempting to enforce a subpoena duces tecum after a 21 month delay in issuance and an 18 month delay in seeking enforcement, the Fifth Circuit, though never speaking directly to the issue of laches, revitalized the *Chromcraft* decision in allowing the Commission to enforce its subpoena.

The simplest construction of these Fifth Circuit cases is that any relief sought by the EEOC in the form of back wages is a "private" action to which state statutes of limitations and the doctrine of laches apply. On the other hand, all injunctive relief sought by the EEOC is construed as a "public" action to which neither state statutes of limitation nor the doctrine of laches applies,

the footnote in *Griffin Wheel* notwithstanding.

These cases, however, create a substantial doubt as to whether the doctrine of laches should apply at all to cases brought by the EEOC. The discussions of laches in all of these cases are dicta—legal conclusions on issues not raised in the lower courts. The Fifth Circuit has never directly considered the issue of laches in governmental EEOC actions as a substantive issue raised on the record below. When it does, this Court is not assured that it will reach the same conclusion as its dicta in *Georgia Power* and *Griffin Wheel*.

 Pragmatically, the doctrine of laches has no practical application in cases brought by the EEOC to correct employment discrimination; the doctrine is entirely overlapped by statutes of limitation and by the Administrative Procedure Act, 5 U.S.C. § 706.[2] The APA allows much the same relief as does the doctrine of laches, but it is statutory, and does not require considerations of public policy or bad faith. Its availability and application is, therefore, even broader than that of laches, and there is no real need for the more narrowly applicable remedy.

 This Court is of the opinion that Judge Edenfield's recent decision in *Moore Group, supra*, 416 F.Supp. 1002, accurately states the law in the Fifth Circuit with regard to the availability of laches as a defense to a suit brought by the EEOC.

In the previous order [*EEOC v. Moore Group, Inc.*, 416 F.Supp. 1002 (N.D.Ga. 1976)], this court held that laches is available as a defense in an action brought by a federal agency for monetary and/or equitable relief, even when brought to enforce public rights. In so doing the court assumed that dictum in *Chromcraft Corp. v. EEOC*, 465 F.2d 745 (5th Cir. 1972), indicating that laches was unavailable in a suit to enforce public rights, had been implicitly overruled by subsequent Fifth Circuit Decisions, specifically *Unit-*

*ed States v. Georgia Power Co.*, 474 F.2d 906 (5th Cir. 1973), and *EEOC v. Griffin Wheel Co.*, 511 F.2d 456 (5th Cir. 1975). Upon reconsideration [in light of *EEOC v. Exchange Security Bank*, 529 F.2d 1214 (5th Cir. 1976)], this court finds that since the issue of laches was not actually before the court in *Georgia Power* and *Griffin Wheel*, and since the discussion of laches in those cases is at least ambiguous, it now declines to hold that laches is available as a defense.

\* \* \* \* \* \*

After setting out the accepted principle that state statutes of limitation are inapplicable when the government sues to enforce a public right, the court in *Georgia Power* held that in suits by EEOC to enforce private rights (e. g., monetary claims for back pay), state statutes of limitation do apply. With respect to the latter suits, the court went on to state in dicta that "As is true with regard to wholly equitable actions, the doctrine of laches is applicable. . . ." *United States v. Georgia Power Co.*, 474 F.2d 906, 923 (5th Cir. 1973). However, in *Griffin Wheel*, in a footnote following a reiteration of the rule concerning the inapplicability of state statutes of limitation in suits to enforce the rights of the sovereign, the court, perhaps mistakenly, cites *Georgia Power* for the proposition that in these public suits "The doctrine of laches would remain applicable." 511 F.2d 456 (5th Cir. 1975).

416 F.Supp. at 1004 & n. 1.

Accordingly, the Court is of the opinion that Defendant Bell's motion to dismiss on the basis of laches should be denied.

## IV.

## THE ADMINISTRATIVE PROCEDURE ACT

Reading together different provisions of the Administrative Procedure Act, particu-

---

2. The availability and application of the APA is discussed in detail *infra*.

larly 5 U.S.C. §§ 706(1), 706(2), & 555(b),[3] the Court in *Moore Group* determined that a suit by the EEOC based on employment discrimination could be dismissed for unreasonable delay on the part of the EEOC. 416 F.Supp. at 1004–1006.

The Fifth Circuit originally raised the question of limitations through the APA in *Chromcraft, supra*, 465 F.2d 745. In that case, the Court noted that 5 U.S.C. § 706(1) *might* be applicable, that that section really *limits* judicial review and empowers federal courts only to *compel* agency action, that it *might* create mandatory duties on administrative agencies sufficient to set aside "unreasonably delayed" agency action, that, if so, it requires a showing of prejudice to the defendant, and, finally, that it must be shown that the delay have resulted from "slothfulness, lethargy, inertia or caprice." 465 F.2d at 747–748. The Fifth Circuit found none of these requisites present in *Chromcraft*. 465 F.2d at 748.

Taken by itself, the discussion of the APA in *Chromcraft* appears to be simply a logical exercise taken for the sake of argument. It would not support a conclusion by a district court that, in the Fifth Circuit, the APA provides for dismissal of a delayed action brought by the EEOC.

In *Exchange Security Bank, supra,* 529 F.2d 1214, however, the Fifth Circuit assumed that 5 U.S.C. § 706(1) *did* apply, and that *Chromcraft* was the law in the Fifth Circuit regarding the setting aside of agency action for lack of punctuality. "[T]he principle established by *Chromcraft* must be applied by this Court in considering the effect of delay uncontrolled by statutory time limitations." 529 F.2d at 1217.

[4] On the basis of *Exchange Security Bank's* reaffirmation of *Chromcraft*, the Court in *Moore Group* held that the APA provides for dismissal of certain EEOC cases that are not punctually brought. This Court agrees.

One logical obstacle to the application of 5 U.S.C. § 706(1) not discussed by the Court in *Moore Group* is that both *Chromcraft* and *Exchange Security Bank* involved attempts by the EEOC to enforce its own processes; they did not involve trials *de novo* in the district court. It is much easier to extrapolate a congressional mandate for punctual action and to apply it under circumstances involving direct administrative action. As the EEOC has pointed out on brief, Chapter 7 of the APA deals with *judicial review* of agency action or non-action. 5 U.S.C. § 701(a) provides:

> This chapter [which includes 5 U.S.C. § 706] applies, according to the provisions thereof, except to the extent that—
>
> (1) statutes preclude judicial review; or
>
> (2) agency action is committed to agency discretion by law.

■ Actions of the EEOC are generally not reviewable by courts, and only by a trial *de novo* may compliance with the Act be enforced. *Alexander v. Gardner-Denver Co.*, 415 U.S. 36, 94 S.Ct. 1011, 39 L.Ed.2d 147 (1974); *Beverly v. Lone Star Lead Construction Corp.*, 437 F.2d 1136, 1141 (5th Cir. 1971). Because the action now before the Court is on trial *de novo* and not on judicial review, the EEOC argues that the congressional mandates and principles expressed in the APA do not apply.

---

**3.** 5 U.S.C. § 706 provides in pertinent part: To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

 (1) compel agency action unlawfully withheld or unreasonably delayed; and

 (2) hold unlawful and set aside agency action, findings, and conclusions found to be—
 * * * * * *

 (D) without observance of procedure required by law[.]
 * * * * * *
In making the foregoing determinations, the court shall review the whole record or those parts of it cited by a party, and due account shall be taken of the rule of prejudicial error.
5 U.S.C. § 555(b) provides in pertinent part: With due regard for the convenience and necessity of the parties or their representatives and *within a reasonable time*, each agency shall proceed to conclude a matter presented to it.

■ This Court does not agree. A suit filed in federal court is under the jurisdiction of the court, not the Commission. If prior administrative inaction so prejudices a lawsuit that it defeats a fair determination of the public policy expressed in the Act, then the court has the power to dismiss the action. It does not matter whether the rule concerning dismissal comes directly from the APA or is of judicial construction—federal common law derived from the congressional mandates and policies expressed in the APA. *See EEOC v. American National Bank*, 420 F.Supp. 181, 13 FEP Cases 572, 574–575 (E.D.Va.1976).

■ *Chromcraft* and *Exchange Security Bank* require that three elements be shown for dismissal under the APA:

(1) a *delay* in action on the part of the agency; (2) which is *unreasonable* —that is, resulting from slothfulness, lethargy, inertia, caprice, etc.; and (3) a showing of *prejudice* to the defendant occasioned by the agency delay.

## V.

## APPLICATION TO THE PRESENT CASE

■ The present EEOC suit is apparently based on some thirteen charges of employment discrimination by individuals. Seven of these charges, by female employees, concern maternity benefits; they were all filed on 21 October 1974 and were made the subject of a cause determination by the EEOC on 23 December 1974. It is not contested that the EEOC's action based on these charges is timely brought and is in all ways proper. These charges will be stayed, however, by agreement, pending the outcome of the Supreme Court's opinion in *Gilbert v. General Electric Co., supra*, Nos. 74–1589 & 74–1590.

Five of the six remaining charges were filed by male individuals in 1966, 1967, and 1968. The first of these alleged failure to hire because of race; three alleged racial discrimination in promotion; and the fifth alleged national origin discrimination in termination during the probationary period. The EEOC determined cause on 13 March 1968 with respect to the first charge, and on 12 November 1969 with respect to the remaining charges. The final non-maternity-benefit charge was filed by a female individual in 1973, alleging national origin discrimination in her probationary-period termination. The EEOC determine cause with respect to her charge on 9 January 1974.[4]

The EEOC sent Defendant Bell letters setting forth its terms of conciliation on both the maternity-benefits charges and the 1966–1968 charges on 4 February 1975, some 5 years 3 months to 6 years 11 months after determination of cause in the 1966–1968 charges. These letters appear to be standard maximum-relief-as-minimum-terms offers at conciliation.

The oldest charge, involving racial discrimination in hiring, was referred to the Justice Department for consideration for prosecution. The last communication between Defendant Bell and the Justice Department took place on 15 December 1970, when Defendant Bell sent a letter supplying additional requested information. No communication from either the Justice Department or the EEOC was received by Defendant Bell on any of the 1966–1968 charges between 15 December 1970 and 4 February 1975, the date of the conciliation letters. The EEOC gained authority to prosecute its own actions in 1972. The present action was filed on 11 September 1975.

The 1968–1969 charges are the sole bases for the present allegations of race and national origin discrimination in hiring, in promotion, and in initial assignment.

■ With regard to these charges, the first element necessary for dismissal under the APA is clearly present. As set forth above, there was an inordinate delay of 5–7 years between the EEOC's determinations

4. Defendant Bell admits that this final charge of probationary termination is properly before the Court.

of cause and the issuance of the conciliation letters. The Court sees no merit in the EEOC's contention that, under the APA, the delay must occur after the failure of conciliation. The Court is of the opinion that so long as the delay is unreasonable and prejudicial, it does not matter at what stage of the administrative proceedings the delay occurred.

The Court is further of the opinion that the second necessary element for dismissal under the APA—that the delay in agency action be unreasonable—is also present.

The delay involved in this case, 5–7 years, is by far the longest delay involved in any case to which this Court has been referred. The only apparent explanation for this delay is administrative lethargy and inertia; the EEOC has not proffered any other explanation. It would appear that when the EEOC decided to file suit on the maternity-benefit charges, it simply gathered all the ancient charges against Defendant Bell still lying around and threw them into the lawsuit.

 This Court is not unmindful of the "undisputed workload and overburdened staff" of the EEOC. *Chromcraft, supra,* 465 F.2d at 747–748. But there must be a limit to the prejudice and inconvenience that can be placed on an employer because of the agency's inability or unwillingness to act promptly. The length of time involved herein, 5–7 years, is simply too long without any other reason to excuse the delay. The public policy expressed in Title VII of the Act was declared by Congress. The Com-

mission itself was established by Congress. If Congress does not see fit to adequately staff or fund the Commission to carry out its declaration of policy, that also is a congressional decision. The federal courts can only go so far in forcing inconvenience and prejudice on defendant employers because of EEOC inaction. The APA is as much a congressional declaration of public policy as is the Act. The APA's condemnation of agency delay, inaction, and prejudice must also be recognized by the federal courts.

The Court finds that Defendant Bell has demonstrated that the final necessary element—prejudice to the defendant occasioned by the delay—is also present. It is to be expected that in the nine years between the filing of the first charge and the bringing of this lawsuit, personnel directors have changed, employees familiar with the facts have long since departed, and those individuals still employed by Defendant Bell would have only vague memories of events that transpired 7–9 years prior to the filing of this lawsuit. Moreover, individuals and files of possibly great importance are no longer available to Defendant Bell.[5] The expediency of keeping the employer on notice that ancient charges were still pending before the Commission would have prevented the loss of relevant files and documents, but the EEOC failed even to pursue this simple procedure.

The Court, therefore, is of the opinion that all claims against Defendant Bell by the EEOC based on the 1966–1968 charges should be dismissed.[6]

---

**5.** For example, Defendant Bell's "Memorandum of Points and Authorities with Respect to *EEOC v. Moore Group, Inc.*" (filed 26 October 1976), as supported by affidavit, states:

> For example, one of the 1967 charges alleged race discrimination in the refusal to promote John A. Lewis. That charge stemmed from a determination by Bell that he failed an upgrade trial in 1967. He was given a second trial for the same job in 1968, which he also failed. Yet he filed no grievance nor made any other complaint about the fairness of the second trial. He voluntarily resigned from Bell in September, 1969. His master personnel file was retained for five more years and finally destroyed in 1974. That was seven years after his charge, four years after the

referral to the Department of Justice, and two years after the EEOC obtained power to initiate its own suits.

> Manuel B. Becerra was a 1968 charging party. He attacked his termination in 1967 during the probationary period. His immediate supervisor, an assistant foreman, left the employ of Bell in April 1969 over seven years ago. The assistant foreman's supervisor, a foreman, died in 1973. See Affidavit of Phillip Waibel attached as Exhibit A.

**6.** The EEOC claims in its "Brief on Issues Raised in Case of *EEOC v. Moore Group, Inc.*" that

> the EEOC currently has approximately 40 outstanding charges which have been filed

## VI.

### ORDER

Accordingly, the Court ORDERS that all claims and relief sought by Plaintiff EEOC in this action based on maternity benefits be hereby stayed pending the decision of the Supreme Court in *Gilbert v. General Electric Co., supra,* Nos. 74–1589 & 74–1590. The Court further ORDERS that Defendant Bell's "Motion to Dismiss and/or for Summary Judgment" be granted, and that all claims and relief sought by the EEOC in this action except those concerning maternity benefits and the issue of national origin in probationary termination (based on the 1973 charge of Rosalva Cervantis) be hereby denied and dismissed.

The Court has painstakingly examined the law in this area and believes that it is correct in its determination of the law and in the application of the law to the facts presented on this motion. Nevertheless, the Court, of its own motion, is of the opinion that this "order involves a controlling issue of law as to which there is a substantial ground for difference of opinion and that an immediate appeal from the order may materially advance the ultimate termination of the litigation." 28 U.S.C. § 1292(b). Should the EEOC decide to pursue an interlocutory appeal under 28 U.S.C. § 1292(b), the Court will, on motion of the parties, stay all further proceedings pending such appeal.

against Bell Helicopter. With this high number of charges filed against a company, it is evident that court action is necessary for this Company to comply with the purposes of Title VII—to eliminate, so far as possible, the last vestiges of an unfortunate and ignominious page in the history of the United States. See generally *Albemarle Paper Co. v. Moody,* 422 U.S. 405, 95 S.Ct. 2362, 45 L.Ed.2d 280, 9 EPD para. 10,230 (1975); *United States v. N. L. Industries,* 479 F.2d 354 (C.A. 8, 1973). If the EEOC does indeed have valid recent discrimination charges against Defendant Bell,

it can, of course, file a new action based on those charges. This Court, as are all federal courts, is interested in effecting the policy of Title VII of the Act. *See, e. g.,* the opinion of this Court in *Vuyanich v. Republic National Bank,* 409 F.Supp. 1083 (N.D.Tex.1976). The very fact that the EEOC has seen fit to pursue such ancient charges, however, would indicate that there are no recent charges alleging the same type of discrimination as do the 1966–1968 charges.