**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**ARROW TRANSPORTATION COMPA-
NY, Tennessee Valley Sand & Gravel
Company, in personam and M/V ALAMO
(ex-ATCO), etc., Defendants-Appellees.**

No. 79–2290.

United States Court of Appeals,
Fifth Circuit.*
Unit B

Oct. 8, 1981.

Rehearing and Rehearing En Banc
Denied Nov. 9, 1981.

Eloise E. Davies, Freddi Lipstein, Dept. of Justice, Civil Div., Appellate Staff, Washington, D. C., Robert V. Smyth, III, Asst. District Counsel, Army Corps of Engineers, Nashville, Tenn., for plaintiff-appellant.

Vance E. Ellefson, Margaret R. Tribble, New Orleans, La., for defendants-appellees.

Before SIMPSON, RONEY and THOMAS A. CLARK, Circuit Judges.

SIMPSON, Circuit Judge:

The United States brought this suit in admiralty under the Rivers and Harbors Act of 1899, 33 U.S.C. § 401 et seq., more specifically 33 U.S.C. §§ 403, 409, 411 and 412,[1] to recover the cost of removing a

---

\* Former Fifth Circuit case, Section 9(1) of Public Law 96–452—October 14, 1980.

1. **§ 403. Obstruction of navigable waters generally; wharves; piers, etc.; excavations and filling in**
   The creation of any obstruction not affirmatively authorized by Congress, to the navigable capacity of any of the waters of the United States is prohibited; and it shall not be lawful to build or commence the building of any wharf, pier, dolphin, boom, weir, breakwater, bulkhead, jetty, or other structures in any port, roadstead, haven, harbor, canal, navigable river, or other water of the United States, outside established harbor lines, or where no harbor lines have been established, except on plans recommended by the Chief of Engineers and authorized by the Secretary of the Army; and it shall not be lawful to excavate or fill, or in any manner to alter or modify the course, location, condition, or capacity of, any port, roadstead, haven, harbor, canal, lake, harbor of refuge, or inclosure within the limits of any breakwater, or of the channel of any navigable water of the United States, unless the work has been recommended by the Chief of Engineers and authorized by the Secretary of the Army prior to beginning the same.

   **§ 409. Obstruction of navigable waters by vessels; floating timber; marking and removal of sunken vessels**
   It shall not be lawful to tie up or anchor vessels or other craft in navigable channels in such a manner as to prevent or obstruct the passage of other vessels or craft; or to voluntarily or carelessly sink, or permit or cause to be sunk, vessels or other craft in navigable channels; or to float loose timber and logs, or to float what is known as "sack

barge from the bottom of the Tennessee River and statutory penalties. The district court found for the defendants on the theory that laches operated against the United States and was a bar to the action. We reverse.

On January 24, 1949, Barge W–222 sank in the Tennessee River next to the Southern Railroad Bridge at mile 304.4. The barge was in tow of M/V Atco (since renamed M/V Alamo), a tug owned by appellee Tennessee Sand & Gravel Company under bareboat charter to, and being operated by, Arrow Transportation Company (Arrow).

According to Thomas Harr, the pilot of the M/V Atco and an employee of Arrow, the tow was carrying five barges when he came on watch before midnight, above the Decatur Highway Bridge. Mr. Harr testified that before retiring, Captain Ritchie

ordered him to tie off one barge at the grain elevator, 1/10 of a mile upstream from the Keller Memorial Highway Bridge. Harr stated "(he) was too close to (the) bridge when (he) tied the other barge off, and ... didn't have enough speed to steer the boat properly." The two lead barges including W–222 broke away and drifted downstream. W–222 struck the Southern Railroad Bridge and sank.

Both the Tennessee Valley Authority and the United States Coast Guard were aware of the accident soon after it occurred. Although both investigated the accident and prepared reports on it, the wreck was not marked and no demand was made on the owner or charterer to raise it. The record does not show that the Corps of Engineers was made aware of the sinking and investigation at the time.

rafts of timber and logs" in streams or channels actually navigated by steamboats in such manner as to obstruct, impede, or endanger navigation. And whenever a vessel, raft, or other craft is wrecked and sunk in a navigable channel, accidentally or otherwise, it shall be the duty of the owner of such sunken craft to immediately mark it with a buoy or beacon during the day and a lighted lantern at night, and to maintain such marks until the sunken craft is removed or abandoned, and the neglect or failure of the said owner so to do shall be unlawful; and it shall be the duty of the owner of such sunken craft to commence the immediate removal of the same, and prosecute such removal diligently, and failure to do so shall be considered as an abandonment of such craft, and subject the same to removal by the United States as provided for in sections 411 to 416, 418, and 502 of this title.

§ 411. Penalty for wrongful deposit of refuse; use of or injury to harbor improvements, and obstruction of navigable waters generally

Every person and every corporation that shall violate, or that shall knowingly aid, abet, authorize, or instigate a violation of the provisions of sections 407, 408, and 409 of this title shall be guilty of a misdemeanor, and on conviction thereof shall be punished by a fine not exceeding $2,500 nor less than $500, or by imprisonment (in the case of a natural person) for not less than thirty days nor more than one year, or by both such fine and imprisonment, in the discretion of the court, one-half of said fine to be paid to the person or persons giving information which shall lead to conviction.

§ 412. Liability of masters, pilots, and so forth, and of vessels engaged in violations

Any and every master, pilot, and engineer, or person or persons acting in such capacity, respectively, on board of any boat or vessel who shall knowingly engage in towing any scow, boat, or vessel loaded with any material specified in section 407 of this title to any point or place of deposit or discharge in any harbor or navigable water, elsewhere than within the limits defined and permitted by the Secretary of the Army, or who shall willfully injure or destroy any work of the United States contemplated in section 408 of this title, or who shall willfully obstruct the channel of any waterway in the manner contemplated in section 409 of this title, shall be deemed guilty of a violation of sections 401, 403, 404, 406, 407, 408, 409, 411 to 416, 418, 502, 549, 686, and 687 of this title, and shall upon conviction be punished as provided in section 411 of this title, and shall also have his license revoked or suspended for a term to be fixed by the judge before whom tried and convicted. And any boat, vessel, scow, raft, or other craft used or employed in violating any of the provisions of sections 407, 408, and 409 of this title shall be liable for the pecuniary penalties specified in section 411 of this title, and in addition thereto for the amount of the damages done by said boat, vessel, scow, raft, or other craft, which latter sum shall be placed to the credit of the appropriation for the improvement of the harbor or waterway in which the damage occurred, and said boat, vessel, scow, raft, or other craft may be proceeded against summarily by way of libel in any district court of the United States having jurisdiction thereof.

In 1972, the United States Corps of Engineers was informed of the wreck by TVA during a routine inventory of the number of vessels in the river. The Corps made soundings of the wreck. On January 30, 1973, the Corps of Engineers wrote Arrow and requested that the sunken barge be removed. When Arrow did not comply, the Corps of Engineers had the barge removed. The work was completed on January 8, 1975, at a cost to plaintiff of $32,727.90. This amount was stipulated below.

On May 12, 1977 the United States brought suit in admiralty to require the in personam defendants to pay the cost of removing the barge from the Tennessee River and statutory penalties under Title 33 U.S.C. § 413. The M/V Alamo was sued in rem. The sinking of the barge was claimed to be caused solely by the negligence of the defendants.

The complaint contained 4 counts. The first asserted that the sunken barge was a public nuisance under federal common law. The second count alleged that the sinking of the barge created an obstruction to navigation in violation of Title 33 U.S.C. § 403. The third claim was that the sinking of the barge violated Title 33, U.S.C. § 409, which it contended makes the defendants liable under Title 33, U.S.C. § 412 for costs of removing the barge and penalties under Title 33 U.S.C. § 411. The fourth count charged that the barge sank due solely to the negligence of the defendants, making them liable for the costs of removal.

The time lapse between the accidental sinking and the filing of suit exceeded 28 years. The defenses asserted were a denial of negligence, a denial that the circumstances permitted suit under Title 33 U.S.C. §§ 403–412 (the River and Harbor Act of 1899) and finally, laches.

■ Although the fact situation describes a textbook case of laches, that defense cannot be asserted against the United States in its sovereign capacity to enforce a public right or to protect the public interest. *United States v. California*, 332 U.S. 19, 67 S.Ct. 1658 at 1669, 91 L.Ed. 1889 (1947); *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019 at 1020, 84 L.Ed. 1283 (1940); *Weiszmann v. Dist. Eng., U.S. Army Corps of Eng.*, 526 F.2d 1302 at 1305 (5th Cir. 1976); *United States v. State of Florida*, 482 F.2d 205 at 569–70 (5th Cir. 1973) (en banc); 77 Am.Jur.2d, United States, § 109 (1975).

The trial judge recognized the principle of law just stated and then in a scholarly opinion sought to mold a change in it. In essence, the Court below gave the following reasons for his decision that laches is a defense against the United States:

1) The decisions in which the Supreme Court refused to apply laches to the United States are not recent.

2) Supreme Court precedent for applying laches against the United States is found in *Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534, 5 L.Ed.2d 551 (1961).

3) While there is Fifth Circuit authority for the proposition that the government is not subject to the defense of laches, there is authority to the contrary.

4) E.E.O.C. cases in the Supreme Court and the Fifth Circuit apply laches against the government.

5) The once unquestioned doctrine that governments are generally immune from actions and defenses has been greatly eroded.

We consider each of these reasons in turn. First, although the Supreme Court cases *United States v. California*, 332 U.S. 19, 67 S.Ct. 1658, 91 L.Ed. 1889 (1947) and *United States v. Summerlin*, 310 U.S. 414, 60 S.Ct. 1019, 84 L.Ed. 1283 (1940)—which hold that laches is not a defense against the United States—were decided many years ago, neither has been overruled or modified. Recent cases continue to cite these cases as authority. *See Costello v. United States*, 365 U.S. 265, 81 S.Ct. 534 at 543, 5 L.Ed.2d 551 (1961); *Weiszmann v. Dist. Eng., U.S. Army Corps of Eng.*, 526 F.2d 1302 at 1305 (5th Cir. 1976); *United States v. Southern Pacific Transp. Co.*, 543 F.2d 676 at 697 (9th Cir. 1976).

Concerning *Costello v. United States*, 81 S.Ct. 534 (1961), the district court opinion stated, "More recently, the Supreme Court assumed that laches was applicable against the United States in a denaturalization proceeding." We do not read *Costello* so broadly. The exact words of *Costello* are, "However, *even if* we assume the applicability of laches, we think that the petitioner failed to prove both of the elements which are necessary to the recognition of the defense." *Costello v. United States, supra*, 81 S.Ct. at 543 (emphasis added). *Costello* by no means holds that laches is applicable against the United States. It merely holds that the petitioner failed to prove both elements of laches so as to require its consideration of that defense. In our opinion *Costello* indicated no change in existing law.

Nor do we find a single Fifth Circuit case, not involving the E.E.O.C., which has changed the law to apply laches against the United States. Several E.E.O.C. cases were emphasized in the opinion of the District Court and the briefs of counsel. Two Fifth Circuit E.E.O.C. cases in particular were cited by the trial court, namely, *United States v. Georgia Power Co.*, 474 F.2d 906 (5th Cir. 1973) and *E.E.O.C. v. Griffin Wheel Co.*, 511 F.2d 456 (5th Cir. 1975). Because the instant case does not involve the E.E.O.C., it is unnecessary for us to reconcile, to interpret or to cite E.E.O.C. cases. Nevertheless, we point out, without adding a non-E.E.O.C. case to the web of the law being woven around E.E.O.C. cases, that close scrutiny of *Georgia Power* reveals the following paragraph:

Where the government is suing to enforce rights belonging to it, state statutes of limitation are not applicable. *See e. g., United States v. Thompson*, 98 U.S. 486, 488–491, 25 L.Ed. 194 (1878) and *United States v. Summerlin*, 310 U.S. 414, 416–417, 60 S.Ct. 1019 [1020], 84 L.Ed. 1283 (1940). However, this principle is not apropos to the present back pay claims. *Insofar as the pattern or practice suit constitutes a proper legal conduit for the recovery of sums due individual citizens rather than the treasury, it is a private and not a public action. Cf. United States v. Beebe*, 127 U.S. 338, 346, 8 S.Ct. 1083 [1087], 32 L.Ed. 121 (1888), and *United States v. Smelser*, 87 F.2d 799 (5th Cir. 1937).

*United States v. Georgia Power Co., supra*, 474 F.2d at 923 (emphasis added). Moreover, a careful reading of *Griffin*, the other E.E.O.C. case cited by the District Court, shows this court may also be approaching it in terms of a "private rights" analysis. *E.E.O.C. v. Griffin Wheel Co., supra*, 511 F.2d at 459. At least one trial judge, who made an exhaustive study of the defense of laches in E.E.O.C. cases, has speculated "that any relief sought by the E.E.O.C. in the form of back wages is a 'private' action to which state statutes of limitations and the doctrine of laches apply." *Equal Employ. Opportunity Com'n v. Bell Helicopter*, 426 F.Supp. 785 at 789 (N.D.Texas 1976). Furthermore, this same opinion suggests that "Pragmatically, the doctrine of laches has no practical application in cases brought by the E.E.O.C. to correct employment discrimination; the doctrine is entirely overlapped by statutes of limitation and by the Administrative Procedure Act, 5 U.S.C. § 706". *Equal Employ. Opportunity Com'n v. Bell Helicopter, supra*, 426 F.Supp. at 790. Whether this judge's attempt at reconciling these cases is completely correct or not, such cases are not acceptable authority in the present situation.

Finally, although the trial court correctly stated the general principle that "the once unquestioned doctrine that governments are generally immune from actions and defenses has been greatly eroded" by Congress and the Supreme Court, neither of these bodies nor the Fifth Circuit has overturned established precedent applicable to the present case.

■ The trial judge's effort to achieve what he considered an equitable and just result is noteworthy. We do not reverse lightly. Nevertheless, on this set of facts, we believe that the court below erred. The law remains unchanged: laches is unavailable as a defense against the United States in enforcing a public right.

The district judge based his decision entirely on the availability of laches as a defense to an action by the United States

and his assessment of the evidence as proving the defense. He concluded his memorandum opinion with the statement, "The court therefore finds it unnecessary to address the other issues and judgment will be entered for defendants."

He left undecided the following issues:

(1) Whether on the facts defendants were negligent;

(2) Whether defendant Arrow was an owner for the purposes of 33 U.S.C. § 409;

(3) Whether defendant Arrow violated either 33 U.S.C. § 403 or 33 U.S.C. § 409 or both; and

(4) Whether 33 U.S.C. § 411 penalties should be imposed.

Upon remand the district court will have the opportunity to reconsider the government's argument as to absolute liability. We express no views regarding the discussion of this issue in the opinion of the district court.

We reverse the judgment below and remand for decision by the district court of these issues upon the present or a supplemental record.

REVERSED and REMANDED.