**UNITED STATES of America,
Plaintiff-Appellant,**

v.

**Robert P. POPOVICH, Jack W. Moncrief, and the University of Texas System, Defendants-Appellees.**

No. 86–1686.

United States Court of Appeals,
Fifth Circuit.

June 26, 1987.

Thomas J. Byrnes, Commercial Lit. Br., Civ. Div., U.S. Dept. of Justice, Washington, D.C., Helen M. Eversberg, U.S. Atty., San Antonio, Tex., for plaintiff-appellant.

Louis T. Pirkey, Arnold, White & Durkee, Michael T. McLemore, Austin, Tex., for defendants-appellees.

Before POLITZ, JOLLY and HIGGINBOTHAM, Circuit Judges.

POLITZ, Circuit Judge:

The United States filed a declaratory action against Robert P. Popovich, Jack W. Moncrief, and the University of Texas System (UTS), seeking a declaration that it is entitled to a certain patent issued to Popovich and Moncrief and the imposition of a constructive trust on all funds derived from the patent. The district court granted judgment in favor of Popovich and Moncrief, finding that the claims of the United States were barred by the doctrine of laches and by the Administrative Procedure Act (APA). The demands against UTS were dismissed under Fed.R.Civ.P. 12(b)(6) for failure to state a claim upon which relief could be granted. We reverse and remand.

*Background*

In 1973 the Department of Health, Education, and Welfare, now Health and Human Services (HHS), awarded UTS a research contract. Popovich, an assistant professor of chemical and biomedical engineering at the University of Texas at Austin, was named the principal investigator, and Moncrief, a physician in the private practice of nephrology and not connected with UTS, was the co-investigator of the research. The contract called for intensive research into peritoneal dialysis.

In peritoneal dialysis, the blood of patients with renal insufficiency is cleansed of toxins by the infusion of a solution directly into the abdominal cavity, for interaction with the blood supply across the peritoneal membrane. Traditional hemodialysis requires removal of the blood for cleansing, a process which is more traumatic and far more expensive. The grant called for the development of mathematical models, in order "to obtain a fundamental understanding of the mass transfer-molecular weight characteristics of peritoneal dialysis," and "to optimize peritoneal dialysis dosage cycles and schedules."

The contract is not of record but there is no dispute that it contains a standard clause for contracts of this type, requiring the grantee to notify HHS when an invention is "made in the course of or under" the contract, and making rights in all such inventions subject to government ownership and disposition. Current HHS regulations similarly provide. *See* 45 C.F.R. § 8 (1986).

During the term of the contract, Popovich and Moncrief developed a new medical treatment modality for patients suffering acute renal failure, which they called Continuous Ambulatory Peritoneal Dialysis (CAPD). CAPD is distinct from earlier

methods of peritoneal dialysis in that it is continuous rather than intermittent, and permits a patient to perform normal activities during treatment. Reportedly, CAPD has become the dominant form of home dialysis, serving approximately 30,000 patients.

Popovich and Moncrief maintain that CAPD was conceived in June 1975, that they disclosed their invention to the HHS contract officer a few months later, and that CAPD is not an invention subject to the provisions of the HHS–UTS contract. In March 1977 a patent was applied for, and in December 1980 patent number 4,239,041 issued to Popovich and Moncrief.

In February 1978 HHS became aware of the pending patent application. During the next six years there were government-initiated investigations, intermittent communications, and unsuccessful settlement efforts, separated by extended periods of inaction by HHS. In February 1984, the instant suit was filed. HHS sought a declaration that the invention was made under the research contract, that it belonged to the United States, and that the government was entitled to an accounting of and a constructive trust over all funds generated by the patent.

Popovich and Moncrief sought summary judgment dismissal because of the delay; UTS sought Fed.R.Civ.P. 12(b)(1) and 12(b)(6) dismissal for lack of jurisdiction and because the claim failed to state a cause of action. The district court granted the summary judgment, finding the government's delay in filing suit unreasonable because of the time that had elapsed between the disclosure of the invention and the filing of suit, including more than three years after the patent holders' rejection of any settlement. The court assigned no reasons for granting the UTS motion to dismiss under Fed.R.Civ.P. 12(b)(6).

### Analysis

#### Laches

■ The issue of laches is controlled by a decision of this court apparently over-looked by the district court. In fine, laches may not be asserted as a defense against the United States when it is acting in its sovereign capacity to enforce a public right or protect the public interest. *United States v. Arrow Transp. Co.*, 658 F.2d 392 (5th Cir.1981), *cert. denied,* 456 U.S. 915, 102 S.Ct. 1769, 72 L.Ed.2d 174 (1982). Relying on *United States v. Summerlin,* 310 U.S. 414, 416–17, 60 S.Ct. 1019, 1020–21, 84 L.Ed. 1283, 1285–86 (1940), and *United States v. Thompson,* 98 U.S. (8 Otto) 486, 488–91, 25 L.Ed. 194, 195 (1878), the panel in *Arrow* reversed the district court's attempt to "mold a change" in the doctrine. *Arrow* at 394. Circuit precedent clearly establishes that "laches is unavailable as a defense against the United States in enforcing a public right." *Id.* at 395.[1]

The holding in *Arrow* binds the disposition of this panel, as it bound the trial court. Appellees' attempt to rely on other authority to buttress the application of laches is not persuasive. Prior decisions have recognized laches against the government, but only against the Equal Employment Opportunity Commission in suits filed to recover sums allegedly due to individuals, not the treasury. *See, e.g., Occidental Life Insurance Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977); *Arrow; EEOC v. Griffin Wheel Co.,* 511 F.2d 456 (5th Cir.1975); *EEOC v. Bell Helicopter,* 426 F.Supp. 785, 793 (N.D.Tex.1976). In *Occidental Life Insurance Co.,* the Supreme Court resolved prior confusion, recognizing the application of laches in Title VII cases brought by the EEOC.

#### Administrative Procedure Act

■ The summary judgment dismissal also refers to section 706 of the Administrative Procedure Act, 5 U.S.C. § 706. Entitled "Scope of review," that section provides in pertinent part:

The reviewing court shall—
(1) compel agency action unlawfully withheld or unreasonably delayed; and
(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

\* \* \* \* \* \*

---

**1.** *But see S.E.R., Jobs for Progress, Inc. v. United States,* 759 F.2d 1 (Fed.Cir.1985).

(D) without observance of procedure required by law;

   *    *    *    *    *    *

"Agency action," as used in section 706, "includes the whole or a part of an agency rule, order, license, sanction, relief, or the equivalent or denial thereof, or failure to act." 5 U.S.C. § 551(13). In addition, 5 U.S.C. § 555(b) provides that:

A person compelled to appear in person before an agency or representative thereof is entitled to be accompanied, represented, and advised by counsel or, if permitted by the agency, by other qualified representative. A party is entitled to appear in person or by or with counsel or other duly qualified representative in an agency proceeding. So far as the orderly conduct of public business permits, an interested person may appear before an agency or its responsible employees for the presentation, adjustment, or determination of an issue, request, or controversy in a proceeding, whether interlocutory, summary, or otherwise, or in connection with an agency function. *With due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it.* This subsection does not grant or deny a person who is not a lawyer the right to appear for or represent others before an agency or in an agency proceeding.

(Emphasis added.) We reach the same conclusion as our colleagues of the District of Columbia Circuit, that these sections define the duty of courts to compel an agency to act where it has failed or refused to act, or has unreasonably delayed acting, in disregard of its congressional mandate. *See Nader v. FCC,* 520 F.2d 182 (D.C.Cir.1975).

We note that the court *a quo* is not alone in reading these sections as authority for the dismissal of actions brought by an agency, upon a finding of unreasonable delay causing prejudice to the defendant. *See, e.g., EEOC v. Bell Helicopter Co.,* 426 F.Supp. 785 (N.D.Tex.1976); *EEOC v. Moore Group, Inc.,* 416 F.Supp. 1002 (N.D.Ga.1976). Recognizing that our prior decisions apparently have led to some uncertainty, we briefly revisit them.

In *Chromcraft Corp. v. EEOC,* 465 F.2d 745 (5th Cir.1972), we made passing reference to the availability of the APA as a defense:

Section 706 *limits* judicial review of agency action and, in the absence of some other limitations provision, empowers federal courts only to "compel agency action unlawfully withheld or unreasonably delayed." Here the employer seeks a nullification of the agency action, not a court order compelling such action.

*Id.* at 747 (emphasis in original). In dictum the panel suggested that, even if it were available, a section 706 defense would not apply because the delay was not unreasonable and there was no showing of prejudice. *Id.* Although it expressly rejected the availability of the defense, as subsequent cases reflect the *Chromcraft* court inadvertently sowed the seed for its later use.

In *EEOC v. Exchange Security Bank,* 529 F.2d 1214 (5th Cir.1976), another panel, citing *Chromcraft,* reversed the district court's refusal to enforce a stale investigative subpoena, impliedly recognizing the existence of a section 706 defense. We remanded for consideration of whether the delay was prejudicial, and later affirmed, by memorandum opinion, the district court's finding of prejudice. *EEOC v. First Alabama Bank of Birmingham,* 440 F.Supp. 1381 (N.D.Ala.1977), *aff'd mem.,* 611 F.2d 132 (5th Cir.1980).

Meanwhile, in *EEOC v. Moore Group, Inc.,* 416 F.Supp. 1002 (N.D.Ga.1976), another district court concluded that although the defense of laches was not available, the APA applied, stating:

In *EEOC v. Exchange Security Bank,* [529 F.2d] at 1217, the Fifth Circuit seems to have resolved its uneasiness concerning the use of § 706 as a defense to lengthy delays in EEOC actions by holding that the requirements of § 706 "established by *Chromcraft* must be applied by this Court in considering the effect of delay uncontrolled by statutory time limitations."

*Moore Group, Inc.,* 416 F.Supp. at 1004. The court dismissed, concluding that the same elements applied under the section 706 defense as under laches. *Id.* at 1005.

In *Bell Helicopter* the district court cited *Chromcraft* and *Exchange Security Bank* in dismissing a stale claim under sections 555(b) and 706. When the claimant later filed suit on his own behalf, the district court dismissed on the basis of *res judicata*. We affirmed that dismissal. *Jones v. Bell Helicopter Co.*, 614 F.2d 1389 (5th Cir.1980).

As recently as 1985 we cited *Chromcraft* and *Exchange Security Bank* in rejecting a section 706 defense for failure to show prejudice, but we again reserved the issue of its applicability:

> [Appellant] urges this Court to invoke its review powers under 5 U.S.C. § 706 to set aside the Board's action as unreasonably delayed. Assuming that section 706 "creates mandatory duties on administrative agencies sufficient to set aside agency action as unlawful if 'unreasonably delayed,' § 706 further requires ... a showing of prejudice before agency action can be set aside for its lack of punctuality."

*King v. National Transp. Safety Board*, 766 F.2d 200, 202 (5th Cir.1985) (*quoting Chromcraft*).[2] Today we squarely face whether sections 706 and 555 of the APA may be used not only to compel but also to bar agency action unreasonably delayed.

We conclude that the plain language of the statute provides no authority for dismissing the action of the HHS. This interpretation is buttressed by the congressional intent reflected in the legislative history of the APA.[3]

We conclude and hold that these sections of the APA grant authority to the courts to compel agency action unreasonably delayed, but do not incorporate the equitable doctrine of laches into judicial review of the timeliness of actions brought by an agency in pursuit of its responsibilities.[4]

*Dismissal of UTS*

 The complaint seeks a declaration that the contract with UTS was breached when Popovich and Moncrief secured a patent and refused to assign it to the United States. UTS was a party to the contract. Use of the grant funds was subject to its control. Without expressing any opinion as to the validity of any claim on the merits, it is manifest that the demands against UTS should not have been dismissed under Fed.R.Civ.P. 12(b)(6). The complaint does state a cause of action against UTS.

REVERSED AND REMANDED.

2. Cases from the Eighth and Ninth circuits also provide little guidance. *See Houseton v. Nimmo*, 670 F.2d 1375, 1377 (9th Cir.1982) (*citing Exchange Security Bank*) (APA allows courts to dismiss as well as compel unreasonably delayed agency action); *EEOC v. Westinghouse Electric Corp.*, 592 F.2d 484 (8th Cir.1979) (courts have equitable powers to dismiss where there has been inordinate delay by EEOC; no need to consider whether these powers derive from laches or the APA); *EEOC v. Liberty Loan Corp.*, 584 F.2d 853, 856 (8th Cir.1978) (reserving APA issue; affirming dismissal based on laches).

Significantly, each of these cases involves the EEOC. We are aware of only one case involving another agency. *Estate of French v. FERC*, 603 F.2d 1158 (5th Cir.1979).

3. The legislative history reflects the intent of Congress to empower the courts to compel unreasonably delayed agency action. There is no mention of an affirmative bar found there. *See* S.Rep. No. 572, 79th Cong., 1st Sess., *reprinted in* Administrative Procedure Act Legislative History, at 187, 214 (1947) (Section 706 "expressly recognizes the right of properly interested parties to compel agencies to act where they improvidently refuse to act."); H.R.Rep. No. 1980,

79th Cong., 2d Sess., *reprinted in* Administrative Procedure Act Legislative History, at 235, 264 (1947) (Section 555(b) requires that "no agency shall in effect deny relief or fail to conclude a case by mere inaction, or proceed in dilatory fashion to the injury of the persons concerned. No agency should permit any person to suffer injurious consequences of unwarranted official delay."). *See also* 92 Cong.Rec. H5657 (statement of Rep. Springer), *reprinted in* Administrative Procedure Act Legislative History, at 295, 377 (1947) ("In many of those cases there has been a withholding or a long delay, and [section 706] is intended to hasten action on the part of these agencies.").

4. In reaching this conclusion we are mindful that Congress has established what it considered to be a reasonable period for the United States to bring an action to enforce contracts. 28 U.S.C. §§ 2415, 2416. In referring to this statute of limitations we make no suggestion as to either its applicability or application in the instant case, referring that matter first to the district court, should it be raised on remand.