**EQUAL EMPLOYMENT OPPORTUNITY COMMISSION, Appellant,**

v.

**LIBERTY LOAN CORPORATION, Appellee.**

No. 78–1263.

United States Court of Appeals, Eighth Circuit.

Submitted Sept. 15, 1978.

Decided Oct. 6, 1978.

854

Neil A. G. McPhie, Atty., E.E.O.C., Washington, D. C., for appellant; Abner W. Sibal, Gen. Counsel, Joseph T. Eddins, Associate Gen. Counsel, Beatrice Rosenberg, Asst. Gen. Counsel, E.E.O.C., Washington, D. C., on the brief.

Michael J. Bobroff, Husch, Eppenberger, Donohue, Elson & Cornfeld, St. Louis, Mo., for appellee; Carroll J. Donohue and Sally E. Barker, St. Louis, Mo., on the brief.

Before GIBSON, Chief Judge, and ROSS and HENLEY, Circuit Judges.

HENLEY, Circuit Judge.

This is an appeal from an order of the district court[1] granting summary judgment to appellee, Liberty Loan Corporation. Appellant, Equal Employment Opportunity Commission (EEOC), filed suit against Liberty Loan on August 1, 1977 pursuant to Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e et seq. (Supp. V 1975), alleging discrimination against females at the company's St. Louis consumer loan branches. Without reaching the merits of this allegation, the district court dismissed the suit under section 706(1) of the Administrative Procedure Act (A.P.A.), 5 U.S.C. § 706(1) (1970), finding as a matter of law that the EEOC had been dilatory in filing suit against Liberty Loan and that the agency's unreasonable delay had prejudiced the company's ability to defend. We affirm the decision of the district court in dismissing this suit but do so without relying on section 706(1).

## I

On April 20, 1973 Ms. Donna Anderson filed a charge of sex discrimination[2] against Liberty Loan at the EEOC district office in St. Louis. The charge was deferred to state officials until May of 1973 when the EEOC assumed jurisdiction of the case and notified Liberty Loan of the charge.

A year later Ms. Anderson's employment was terminated while this administrative action was still pending. Liberty Loan alleged the termination was simply a part of the company's over-all reduction in force in the St. Louis area which was implemented as a result of severe economic reverses suffered by the company in 1973 and 1974. Ms. Anderson, however, filed an amended charge with the EEOC on October 16, 1974 which included new allegations of sex discrimination based on her termination.

Shortly after the October filing, the EEOC's formal investigation began. Liberty Loan was given a second notice document which included the amended charges in November of 1974. The investigation lasted approximately nine months, and the agency issued a determination on August 21, 1975 that there was cause to believe Liberty Loan had engaged in discriminatory practices. The EEOC soon discovered that its investigators had inadvertently failed to address the termination allegations in Ms. Anderson's amended charge. Thus, in October of 1975 the agency reopened its investigation; and a revised determination was not issued until six months later.

At this point the EEOC and Liberty Loan began conciliation efforts. Upon failure to reach an agreement, the EEOC brought suit in August of 1977, four years and four months after Ms. Anderson filed her initial charge.

1. The Honorable H. Kenneth Wangelin, United States District Judge, Eastern District of Missouri.

2. The charge alleged sex discrimination against Ms. Anderson and all of Liberty Loan's other female employees in the St. Louis area. The specific allegations charged discrimination in wages, promotion, job classification, benefits, exclusion and terms and conditions of employment.

The uncontroverted affidavits of Liberty Loan's top executive officers establish that during the course of the above administrative process the company suffered serious financial setbacks which forced a drastic, company-wide reorganization. All but one of Liberty Loan's nine St. Louis branch offices were closed during 1974 and 1975. Operational control of the company was transferred to new management which accelerated employee layoffs and branch office closings and instituted a new centralized personnel system.

In 1976 the one remaining St. Louis branch office ceased normal consumer operations which were not restored until 1977. Indeed, this single St. Louis office now employs only four persons. And, as the district court noted, of the one hundred and forty-five persons employed in the St. Louis area by Liberty Loan at the time of the initial charge, only five are still with the company. Ms. Anderson's immediate supervisors are no longer employed by the company, nor are any of the persons responsible for the company's personnel policies and practices in 1973. In effect, Liberty Loan is now an essentially different company from that which allegedly discriminated against her.

Based upon this evidence, the district court ruled that the lengthy administrative delay, caused in part by the EEOC's inadvertent failure to initially investigate all of Ms. Anderson's allegations, was unreasonable. It also found that Liberty Loan was prejudiced by this delay because all the persons even remotely connected with the original charge were no longer employees of the company. The St. Louis offices had been closed and their records consolidated and in some cases lost. The district court concluded that it would be "manifestly unfair to require Liberty Loan to defend this action after administrative delay has made such a defense difficult if not impossible" and found authority under section 706(1) of the A.P.A. to dismiss the suit on these grounds.

II

We first note that the issue of whether section 706(1) of the A.P.A.[3] can be invoked by a district court to dismiss federal agency action on the grounds of unreasonable delay and prejudice is a matter of first impression for this court.[4] The district court in a well reasoned and thoroughly documented opinion calls our attention to several district court decisions from other circuits which have applied section 706(1) to reach this result. See *E.E.O.C. v. Moore Group, Inc.*, 416 F.Supp. 1002 (N.D.Ga.1976); *E.E.O.C. v. Bell Helicopter Co.*, 426 F.Supp. 785 (N.D. Tex.1976); *E.E.O.C. v. American Nat'l Bank*, 420 F.Supp. 181 (E.D.Va.1976). The fifth circuit in *E.E.O.C. v. Exchange Security Bank*, 529 F.2d 1214 (5th Cir. 1976), has also adopted this position. In general, these decisions read section 706(1) together with

---

3. 5 U.S.C. § 706 provides in pertinent part:

To the extent necessary to decision and when presented, the reviewing court shall decide all relevant questions of law, interpret constitutional and statutory provisions, and determine the meaning or applicability of the terms of an agency action. The reviewing court shall—

(1) compel agency action unlawfully withheld or unreasonably delayed; and

(2) hold unlawful and set aside agency action, findings, and conclusions found to be—

. . . . .

(D) without observance of procedure required by law; . . .

4. It was also argued before the district court and this court that the common law doctrine of laches can be invoked to bar dilatory agency action. The district court's opinion did not rely on this doctrine in dismissing the suit below because the court was uncertain whether the laches doctrine can be applied to bar actions by the sovereign. We express no opinion on whether this doctrine can operate to bar federal agency action since we dispose of this case on narrower grounds. We note, however, that many of those courts which have applied section 706(1) in dismissing dilatory agency actions have simultaneously refused to apply the laches doctrine because of its uncertain parameters. See, e. g., *E.E.O.C. v. Moore Group, Inc.*, 416 F.Supp. 1002 (N.D.Ga.1976). For a case applying this doctrine to bar suit by the EEOC in a Title VII case, see *E.E.O.C. v. C & D Sportswear Corp.*, 398 F.Supp. 300 (M.D.Ga. 1975).

other provisions [5] of the A.P.A. as conferring upon a reviewing court the power to dismiss agency action which has been unreasonably delayed to the prejudice of the defendant.

■ It is clear that section 706(1) applies to the situation where a federal agency refuses to act in disregard of its legal duty to act. The section specifically states that a "reviewing court shall—(1) compel agency action unlawfully withheld or unreasonably delayed." In this regard the D.C. circuit has stated that "[u]nder the Administrative Procedure Act, administrative agencies have a duty to decide issues presented to them within a reasonable time, and reviewing courts have a duty to compel agency action 'unlawfully withheld or unreasonably delayed.'" *Nader v. F.C.C.*, 172 U.S.App. D.C. 1, 25, 520 F.2d 182, 206 (1975) (citations omitted).

Yet as the opinions of the courts allowing section 706(1) to be used as a defense against dilatory agency action recognize, the section does not expressly address the situation dealt with in those cases and now before this court. That is, it does not contain specific language authorizing a district court to dismiss agency action which has been unreasonably delayed but only grants the reviewing court jurisdiction to compel an agency to act when it is under a duty to do so. At least one court has refused to construe the section as a basis for dismissing agency action. In *E.E.O.C. v. Raymond Metals Prod. Co.*, the district court found that section 706(1) "was clearly intended for situations where an agency has failed to take appropriate action and not for situations . . . where the agency action has been taken in an allegedly unreasonable time." 385 F.Supp. 907, 914 (D.Md.1974). The fourth circuit affirmed this decision without reference to the section 706(1) problem. *E.E.O.C. v. Raymond Metals Prod. Co.*, 530 F.2d 590 (4th Cir. 1976).

Mindful of the divergence of views with respect to the interpretation of section 706(1), we are presently unwilling to either adopt or reject the construction placed upon it by the district court. We are reluctant to place a broad and questionable interpretation on this section when we believe its application is unnecessary to the proper disposition of the matter before us.

This is not to say that the district court erred in dismissing this suit or that it applied the wrong standards in doing so. The Supreme Court in *Occidental Life Ins. Co. v. E.E.O.C.*, 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977), recognized that even though the EEOC is not bound by a specific statute of limitations in filing a Title VII lawsuit, district courts possess the discretionary power to provide appropriate equitable relief to a defendant who has been prejudiced by the EEOC's unreasonable conduct.

It is, of course, possible that despite these procedural protections [referring to various statutory safeguards in Title VII and the regulations of the EEOC] a defendant in a Title VII enforcement action might still be significantly handicapped in making his defense because of an inordinate EEOC delay in filing the action after exhausting its conciliation efforts. If such cases arise the federal courts do not lack the power to provide relief. This Court has said that when a Title VII defendant is in fact prejudiced by a private plaintiff's unexcused conduct of a particular case, the trial court may restrict or even deny backpay relief. *Albemarle Paper Co. v. Moody*, 422 U.S. 405, 424–25, 95 S.Ct. 2362, 2374–2375, 45 L.Ed.2d 280. The same discretionary power to "locate a just result in light of the circumstances peculiar to the case,"

---

5. These courts place additional reliance on section 706(2) which provides in relevant part that a reviewing court shall "hold unlawful and set aside agency action . . . found to be . . . without observance of procedure required by law" and on section 555(b) which states that

"[w]ith due regard for the convenience and necessity of the parties or their representatives and within a reasonable time, each agency shall proceed to conclude a matter presented to it." *See E.E.O.C. v. Moore Group, Inc., supra*, 416 F.Supp. at 1004, n.3.

*ibid.*, can also be exercised when the EEOC is the plaintiff.

*Id.* at 373, 97 S.Ct. at 2458.

■ We adopt the position taken by the Supreme Court in *Occidental Life* and hold only that in Title VII litigation a district court has discretionary equitable powers to dismiss the suit in the narrow situation where there has been an inordinate EEOC delay in filing suit and this delay has unduly prejudiced the position of the defendant. The only issue which remains is whether the district court in this case correctly found unreasonable delay and prejudice as a matter of law.

### III

The standards for summary judgment are well settled in this circuit. We have repeatedly recognized that summary judgment is an extreme remedy and one which is not to be entered unless the movant has established its right to a judgment with such clarity as to leave no room for controversy and that the other party is not entitled to recover under any discernible circumstances. *Bellflower v. Pennise,* 548 F.2d 776 (8th Cir. 1977); *Robert Johnson Grain Co. v. Chemical Interchange Co.,* 541 F.2d 207 (8th Cir. 1976); *Percival v. General Motors Corp.,* 539 F.2d 1126 (8th Cir. 1976); *Windsor v. Bethesda General Hospital,* 523 F.2d 891 (8th Cir. 1975).

■ In passing upon a motion for summary judgment the court is required to view the facts in the light most favorable to the party opposing the motion and to give that party the benefit of all reasonable inferences to be drawn from the underlying facts disclosed in the pleadings, depositions and affidavits filed in the case. *Adickes v. S. H. Kress & Co.,* 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *United States v. Diebold, Inc.,* 369 U.S. 654, 82 S.Ct. 993, 8 L.Ed.2d 176 (1962); *Robert Johnson Grain Co. v. Chemical Interchange Co., supra,* 541 F.2d at 210; *Percival v. General Motors Corp., supra,* 539 F.2d at 1129.

In reviewing the record before us, we must determine whether substantial fact questions exist concerning Liberty Loan's claims of unreasonable delay and prejudice which would render the district court's granting of summary judgment improper.

*Unreasonable Delay.*

As noted, the total period of delay in bringing suit in this case was four years and four months. There are several lengthy administrative delays within this period. The EEOC waited almost nineteen months after the first charge was filed before beginning its formal investigation, and its first determination was not issued until two years and three months after this initial filing. An additional, and obviously unnecessary, eight month delay was then added to the process as a result of the agency's failure to address Ms. Anderson's termination contentions. Finally, suit was not filed until almost one year after conciliation negotiations ended.

The EEOC asserts the delay in this case was reasonable, noting that most of the cases finding unreasonable delay have involved periods of over five years. We note that while this is generally true, some courts have found a delay even shorter than that which occurred in this case to be unreasonable. *See, e. g., E.E.O.C. v. Westinghouse Electric Corp.,* 450 F.Supp. 792 (E.D. Mo.1978) (three and one-half year delay). Moreover, this court *en banc* has expressed concern about EEOC investigatory delays ranging from ten months to two and one-half years. *Lacy v. Chrysler Corp.,* 533 F.2d 353, 361 n.8 (8th Cir. 1976). We are unwilling to rule that any set length of delay is per se unreasonable, but rather look to the facts of each case to determine reasonableness. Here the delay was not only inordinately long, but was caused in part by the agency's unexplained failure to properly conduct its investigation.

The only justification offered by the EEOC for this delay is a general reference to its heavy, agency-wide workload.[6] As

6. It should be noted that the heavy work load faced by the E.E.O.C. has not been considered an adequate explanation for procrastination:

This Court is not unmindful of the "undisputed workload and overburdened staff" of the E.E.O.C. *Chromcraft, supra,* 465 F.2d at

the district court's opinion reflects, however, the agency made no effort to document its St. Louis office caseload and explain the delay *in this case* in response to Liberty Loan's affidavits supporting its motion for summary judgment. We agree with the district court's finding that the delay here gave rise to an inference of unreasonableness and that the EEOC, as the party best able to provide documentary evidence concerning its workload, should have shouldered the burden of explaining the delay rather than resting on the general allegations of reasonableness in its pleadings. *See* District Judge Edenfield's opinion in *E.E.O.C. v. Moore Group, Inc., supra,* 416 F.Supp. at 1005–06, which adopts this approach.

*Prejudice to Defendant.*

With regard to the prejudice issue, the district court found

> [t]he prejudice to defendant is obvious. None of the supervisors connected in any way with the employment of Ms. Anderson are now working for defendant. Almost all the people even remotely connected with the management of defendant's entire corporate structure in 1973 are gone. The St. Louis offices have been eliminated and their records consolidated and in some cases lost . . .. [I]t would be manifestly unfair to require Liberty Loan to defend this action after administrative delay has made such a defense difficult if not impossible.

In seeking reversal of this decision, EEOC argues that Liberty Loan's affidavits fail to establish that the company does not possess the records necessary to defend Ms. Anderson's charges and that the evidence that necessary witnesses are unavailable is not convincing. However, we are not persuaded by these arguments. Assuming that

Liberty Loan could locate relevant records, it would still face the hardship of locating former employees and procuring their testimony in defense of the charges here presented.

It was well within the equitable powers of the district court to dismiss. It would be grossly unfair to require Liberty Loan to spend large amounts of time and money in attempting to locate former employees and records in order to defend an essentially moot lawsuit which was unreasonably delayed by EEOC.

Affirmed.

---

747–48. But there must be a limit to the prejudice and inconvenience that can be placed on an employer because of the agency's inability or unwillingness to act promptly. The length of time involved herein, 5–7 years, is simply too long without any other reason to excuse the delay. The public policy expressed in Title VII of the Act was declared by Congress. The Commission itself was established by Congress. If Congress does not see fit to adequately staff or fund the Commission to carry out its declaration of policy, that is also a congressional decision . . . *E.E.O.C. v. Bell Helicopter Co., supra,* 426 F.Supp. at 793.