**EQUAL EMPLOYMENT OPPORTUNI-TY COMMISSION, Plaintiff,**

v.

**INDIANA BELL TELEPHONE COMPANY, INCORPORATED, Defendant.**

**No. IP 81–408–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

March 28, 1986.

David B. Hunter and Linda R. Zook, Indianapolis, Ind., for plaintiff, E.E.O.C.

Lee B. McTurnan, Michael B. Cracraft, Harry F. Todd, Smith, Morgan & Ryan, A. David Stippler, Indianapolis, Ind., for defendant, Indiana Bell Telephone Co., Inc.

MEMORANDUM ENTRY

NOLAND, Chief Judge.

I. INTRODUCTION.

In this class action suit, the Equal Employment Opportunity Commission ("EEOC") charges that the defendant Indiana Bell's pregnancy and maternity related leave policies and procedures, dating from 1972 to the present ("pregnancy policies"), violate Title VII in that they discriminate against female employees on the basis of their sex. Indiana Bell has filed a motion for summary judgment on the ground that the EEOC's claim is barred by laches. The motion was fully briefed in October of 1985, and the Court heard oral argument on February 20, 1986. The Court finds that the EEOC inexcusably and unreasonably delayed in filing suit and that said delay has caused Indiana Bell undue

prejudice in defending this suit. Therefore, the defendant's motion for summary judgment shall be GRANTED.

This suit, in its administrative form, started almost 14 years ago, in April of 1972, when a charge was filed with the EEOC challenging Indiana Bell's pregnancy policies. Similar charges were filed subsequently against Indiana Bell and against Bell companies in other states. Local action on the charges was deferred while the American Telephone and Telegraph Company ("AT & T") and the EEOC tried to resolve them on a national level. The national efforts failed in late 1975, after which the charges were sent back to local EEOC personnel for processing. The local EEOC attempted to investigate the charges, but Indiana Bell refused to cooperate in the investigation and to attempt conciliation. Nevertheless, in 1976 the EEOC sent out letters of determination stating that there was reasonable cause to believe that Indiana Bell had discriminated against the charging parties. In 1977, Indiana Bell sent out revised letters of determination to some charging parties, reflecting the Supreme Court's ruling in *General Electric Co. v. Gilbert*, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343 (1976). The EEOC sent Indiana Bell a final offer of conciliation in March of 1980, which Indiana Bell refused. Finally, on April 23, 1981, nine years after the initial charge was filed with the EEOC, the EEOC filed the complaint in this cause on the basis of 53 charges that had been filed from 1972 through 1977, all of which charged Indiana Bell with sex discrimination based on their pregnancy policies.

The charges which form the basis for the complaint in this cause all occurred before the Pregnancy Discrimination Act of 1978 was passed by Congress. This act drastically changed the law regarding pregnancy and the proof of sex discrimination. Before the passage of this act, the Supreme Court stated the law in this area when it held in *Gilbert* that a disability benefits plan's failure to cover pregnancy-related disabilities was not discriminatory because men and women were covered, and not covered, for the same risks. The package was worth no more to men than to women. 429 U.S. at 138, 97 S.Ct. at 409. The Supreme Court pointed out that, although pregnancy is confined to women, it differed from covered diseases and disabilities in significant ways, including that it is often a voluntarily undertaken and desired condition. 429 U.S. at 136, 97 S.Ct. at 408. Exclusion of pregnancy benefits would be discriminatory only if the plaintiffs proved that the exclusion was a mere "pretex[t] designed to effect an invidious discrimination against the members of one sex or the other." *Id.*

The EEOC alleges that Indiana Bell violated Title VII by maintaining two separate and distinct leave policies and procedures— one for pregnancy and maternity related medical conditions and another for non-pregnancy related temporary physical disabilities. According to the EEOC, the policies in effect from 1972 through August 6, 1977 discriminated against women on the basis of sex in the following ways:

1. by not allowing female employees on pregnancy-related leave to accrue seniority past 30 days while allowing employees on sickness disability leave to accrue seniority for the entire period, up to 52 weeks;

2. by not guaranteeing reinstatement to female employees requesting return from pregnancy-related leave while guaranteeing reinstatement upon request to employees returning from sickness disability leave;

3. by requiring pregnant employees to take maternity leave in their sixth month of pregnancy for a mandatory six-month time period regardless of ability to work while requiring employees to go on sickness disability leave only when they are actually disabled and allowing them to return to work when the disability ceases;

4. by terminating all income payments of employees on maternity leave while providing disability income pay-

ments to employees on sickness disability leave;

5.  by prohibiting pregnant employees from taking earned, paid sick days and vacation days for pregnancy related reasons while no such restrictions were put on employees with other temporary sicknesses or disabilities;

6.  by cancelling all company paid health insurance benefits of employees on maternity leave while continuing company paid health insurance benefits for employees on sickness disability leave; and

7.  by discontinuing all company paid benefits of female employees on maternity leave while continuing to provide all company paid benefits to employees on sickness disability leave.

EEOC's Memorandum Of Law In Support Of Plaintiff's Motion For Partial Summary Judgment at 4–5. Indiana Bell first changed its policies on August 7, 1977, and then again on April 29, 1979 to comply with the Pregnancy Discrimination Act of 1978, Pub.L. No. 95–555, 92 Stat. 2076 (1978). The EEOC has alleged that the policies in effect from August 7, 1977 to date discriminate against women,[1] but has not enlightened the Court as to why they are discriminatory.

## II. AFFIRMATIVE DEFENSE OF LACHES.

Indiana Bell has filed a motion for summary judgment on the basis of laches.[2] To dismiss a case based on laches, a court must find that the plaintiff unreasonably delayed in filing the action and that the

delay has caused the defendant undue prejudice. *EEOC v. Massey-Ferguson, Inc.,* 622 F.2d 271, 275 (7th Cir.1980). Both elements are present in this case. The EEOC filed the complaint more than nine years after the first charge was filed with the EEOC and more than three and a half years after the final letters of determination were issued on all but two of the 53 charges which form the basis of this complaint. Although it was reasonable for the EEOC not to file suit during a portion of this time, a substantial amount of the delay was inexcusable. This inexcusable delay has prejudiced Indiana Bell by depriving it of testimony of crucial witnesses who are now unavailable or have substantially faded memories.

The EEOC has argued that inexcusable delay and undue prejudice involve a factual determination, and thus cannot be decided on a motion for summary judgment. The EEOC is incorrect, at least partially. Inexcusable delay is a legal question when, as here, the underlying facts have been established. *EEOC v. Great Atl. & Pac. Tea Co.,* 735 F.2d 69, 81 (3rd Cir.1984). In preparing the summary of events and in the discussion that follows, the Court has relied mainly on factual allegations that are not in dispute. In those few instances where the facts are unclear or in dispute, this Court has looked at the situation in the light most favorable to the EEOC, the non-movant.

### A. *Inexcusable Delay*

To grant dismissal of a cause of action for laches, a court must find not merely a

---

1.  The EEOC has not commented on Indiana Bell's claim in its brief that the EEOC has investigated Indiana Bell's current pregnancy policies twice and has found no reasonable cause to believe there is pregnancy or sex discrimination under the policies in effect since 1979.

2.  Indiana Bell did not, and could not, assert a defense based on the statute of limitations because a statute of limitations defense is not available for employment discrimination actions brought by the EEOC. *Occidental Life Ins. Co. v. EEOC,* 432 U.S. 355, 97 S.Ct. 2447, 53 L.Ed.2d 402 (1977). However, the Supreme

Court recognized that a defendant might be harmed by inordinate EEOC delay, in which case "the federal courts do not lack the power to provide relief." *Occidental Life,* 432 U.S. at 373, 97 S.Ct. at 2458. This *dicta* has been relied on by lower courts to support their use of laches as the grounds for dismissing actions brought by the EEOC. *See, e.g., EEOC v. Great Atl. & Pac. Tea Co.,* 735 F.2d 69, 80 (3rd Cir.1984); *EEOC v. Dresser Industries, Inc.,* 668 F.2d 1199, 1201 (11th Cir.1982); *EEOC v. Massey-Ferguson, Inc.,* 622 F.2d 271, 275 (7th Cir.1980); *EEOC v. Liberty Loan Co.,* 584 F.2d 853, 857 (8th Cir.1978).

delay, but an inexcusable, unreasonable, undue or inordinate delay in asserting a claim. *See, e.g., Massey-Ferguson,* 622 F.2d at 275. In analyzing the nine year delay between the filing of the first charge and the filing of the complaint, the Court has excluded three years and eight months as excusable delay because the matter was the subject of national settlement efforts. However, the remaining five year and four month delay is inexcusable. In particular, it was unreasonable for the EEOC to take virtually no action on the case for three and one-half years before filing suit.

Following is a summary of the progress of this case from the filing of the first charge until the filing of the complaint:

<u>1972</u>

4/72 First charge of pregnancy related sex discrimination is filed with the EEOC against Indiana Bell.

4/72 EEOC mails notice of charge to Indiana Bell.

5/72 EEOC begins investigation of charge.

<u>1973</u>

3/73 EEOC and AT&T (including Indiana Bell) agree to national efforts to settle pregnancy related discrimination charges. Pursuant to agreement with Indiana Bell, local EEOC office stops investigation of charges while they are the subject of national negotiations.

<u>1975</u>

12/75 National efforts fail.

<u>1976</u>

2/76 Local EEOC renews investigation of pregnancy related sex discrimination charges against Indiana Bell and sends interrogatories to Indiana Bell.

3/76 Indiana Bell refuses to respond to EEOC interrogatories.

4/76 EEOC informs Indiana Bell that letters of determination will be issued if Indiana Bell does not respond to the 2/76 interrogatories.

4/76 Indiana Bell refuses to provide requested information.

6/76 69 identical "cause" letters of determination are issued by EEOC.

10/76 19 more identical "cause" letters of determination issued by EEOC.

12/76 Supreme Court's decision in *General Electric Co. v. Gilbert,* 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343, holds certain pregnancy related policies are not sex discrimination. Decision reverses EEOC's prior interpretation of the law.

<u>1977</u>

3–6/77 In light of *Gilbert,* EEOC amends 28 of the previously issued letters of determination to findings of no cause.

4/77 Last charge of pregnancy related sex discrimination is filed with EEOC against Indiana Bell.

6–9/77 EEOC "administratively closes" 9 cases in which "cause" letters of determination had previously been entered.

8/77 Indiana Bell changes pregnancy policies.

<u>1978</u>

4/78 EEOC issues letters of determination on the last two charges filed against Indiana Bell.

10/78   Congress passes the Pregnancy Discrimination Act amending Title VII to clarify that discrimination on the basis of pregnancy is sex discrimination. Reverses *Gilbert.*

**1979**

4/79    Pregnancy Discrimination Act becomes effective, as do Indiana Bell's new pregnancy policies.

**1980**

3/80    EEOC extends Indiana Bell a final offer of conciliation.

**1981**

4/81    EEOC files suit against Indiana Bell based on 53 charges of pregnancy related sex discrimination.

---

1.  *April, 1972—December, 1975: Excusable Delay*

The national efforts period is excusable delay. This first time period runs from April of 1972 (when the first charge was filed) until the end of 1975 (when the national settlement efforts failed). In March of 1973, less than a year after the first charge was filed, a meeting was held in Chicago, Illinois between representatives of the EEOC, AT & T and certain of its Bell operating companies. Representatives from both the local EEOC office and Indiana Bell were present. The purpose of the meeting was to improve the procedures for handling EEOC charges filed against AT & T and its operating companies. As a result of this meeting, the parties agreed that charges with "national implications" would be handled by the parties' national offices. The EEOC and Indiana Bell agreed that investigation and further action on a charge should be stopped while the charge was the subject of national settlement efforts. Bloss Affidavit, ¶ 5; Indiana Bell Appendix, Ex. 4.[3] The EEOC and Indiana Bell further agreed that the

first charge filed and other charges subsequently filed had "national implications" and should be dealt with on the national level. Indiana Bell Appendix, Exs. 5, 6 and 7. Of the 53 charges which form the basis for the complaint in this action, approximately 35 were filed before the national efforts failed. Indiana Bell Appendix, Ex. 29. The Court assumes that all of these had "national implications," although neither party has so stated. On or about December 16, 1975, the national efforts to resolve pregnancy related sex discrimination charges failed, and the charges were sent back for disposition at the local level. Spurlock Affidavit, Ex. 18.[4] Pregnancy related sex discrimination charges filed after 1975 were also to be handled at the local level.

The primary reason for finding the national efforts time period to be excusable delay is that to do otherwise would discourage parties from attempting to settle employment discrimination cases. As a general principle, "[i]n the interest of encouraging disputants to settle claims prior to the institution of litigation, ... such a period

---

**3.** Both the affidavit and the exhibit are from the Appendix Of Indiana Bell In Support Of Motion For Summary Judgment On Laches ("Indiana Bell Appendix"). Unless otherwise noted, all affidavits cited in this Memorandum Entry are from the Indiana Bell Appendix.

**4.** The Affidavit Of Osma D. Spurlock ("Spurlock Affidavit") was filed by the EEOC in opposition to the defendant's motion for summary judgment. Exhibits attached to said affidavit will be referred to as "Spurlock Affidavit, Ex. ___."

[settlement talks] should not be counted for purposes of laches." *Mogavero v. McLucas,* 543 F.2d 1081, 1083 (4th Cir. 1976). In the case at hand, the policy of encouraging settlement has even more force because Congress has indicated that cooperation and conciliation are the preferred means of resolving employment discrimination disputes. *Occidental Life,* 432 U.S. at 367–68, 97 S.Ct. at 2455. The EEOC "is a federal administrative agency charged with the responsibility of investigating claims of employment discrimination and settling disputes, if possible, in an informal, noncoercive fashion. Unlike the typical litigant . . . the EEOC is required by law to refrain from commencing a civil action until it has discharged its administrative duties." *Occidental Life,* 432 U.S. at 368, 97 S.Ct. at 2455. The procedure Congress set up for the resolution of employment discrimination disputes recognizes that such disputes are best resolved when the parties fashion their own remedy. The court should not be required to act as a super-personnel office every time an employer and an employee have a dispute. It is only after the parties and the EEOC have failed in their attempt to resolve the dispute that the court should become involved. Counting the time spent in conciliation as inexcusable delay would seriously undercut the Congressional policy favoring pre-litigation resolution of employment discrimination disputes. Therefore, the Court will not fault the EEOC for time spent in serious efforts to resolve the charges in this case on the national level.

An additional reason for not counting the national efforts time period for laches purposes is that Indiana Bell agreed to the national efforts. Indiana Bell was well aware, therefore, that a lawsuit would not be filed unless and until the national efforts failed. The agreed delay is thus excluded as a consideration in determining whether this suit is subject to dismissal.

The Court is also counting as excusable the eleven months from the time the first charge was filed until the parties agreed to national conciliation efforts, although it is possible that not all of the time should be excusable. Within the first few months after the first charge was filed, the record shows that the EEOC sent notice of the charge to Indiana Bell and commenced investigation of the charge. Spurlock Affidavit, Ex. 3. It is not clear how long the investigation continued. If the EEOC did not progress promptly with its investigation, the Court assumes that the EEOC knew before the March meeting that national efforts were being contemplated and that the slow down was in anticipation of those efforts. The Court is not required to make this assumption, but it is reasonable, and the Court is trying to look at the delay in the light most favorable to the EEOC. As a result, the Court is counting the first time period, from April of 1972 through the end of 1975, as excusable delay.

### 2. *January, 1976—April, 1981: Inexcusable Delay*

The second time period, from the beginning of 1976 (when national conciliation efforts failed) until April of 1981 (when the complaint was filed), is found to be inexcusable delay. The EEOC claims in its brief that it took from 1976 through 1981 to investigate, make determinations, attempt conciliation and file suit. Plaintiff Equal Employment Opportunity Commission's Response to Defendant's Motion For Summary Judgment ("EEOC's Response Brief") at 16. Even if there might be a case so large and complex that the EEOC could be actively pursuing it for five and one-half years before filing suit, the record shows that this is not such a case. In fact, the record indicates that the EEOC did virtually nothing on this case for three and one-half years. The EEOC's delay in filing a complaint in this case was, therefore, inexcusable.

When the national settlement efforts failed, the local EEOC office suddenly had 69 charges back on its desk. Over the

course of the next six months, 19 more charges were added. Indiana Bell Appendix, Ex. 29. In February of 1976, the local EEOC office renewed its investigation of the pregnancy related sex discrimination charges against Indiana Bell by requesting Indiana Bell to provide certain information. Spurlock Affidavit, Ex. 12. Indiana Bell refused to cooperate with the investigation. Spurlock Affidavit, Ex. 13. In April of 1976, the EEOC warned Indiana Bell that if cooperation was not forthcoming, the EEOC would issue letters of determination supporting a finding that Indiana Bell discriminated against the charging parties. Spurlock Affidavit, Ex. 16. Indiana Bell again refused to cooperate in the EEOC's investigation. In June of 1976, the EEOC issued identical "cause" letters of determination on the 69 charges pending against Indiana Bell. Bates Affidavit, ¶ 7; Indiana Bell Appendix, Exs. 14 and 15. According to the letters, the EEOC "infer[ed] that if the requested information had been supplied by Respondent [Indiana Bell] it would have been adverse to Respondent and conclude[d] that Respondent maintains the maternity leave (and benefits) policies attributed to it by Charging Party in conflict with the Commission's Guidelines on Discrimination Because of Sex...." In October of 1976, the EEOC issued 19 more "cause" letters of determination, incorporating the 69 "cause" letters issued in June. These letters were for charges filed from late 1975 through June of 1976.

Following the issuance of the "cause" letters was a two month lull ended by the Supreme Court's decision in General Electric Co. v. Gilbert, 429 U.S. 125, 97 S.Ct. 401, 50 L.Ed.2d 343, which forced the EEOC to reevaluate all the charges filed against Indiana Bell. Spurlock Affidavit, Ex. 23. The Supreme Court held in Gilbert that General Electric had not impermissibly discriminated against women through its use of a disability plan that paid income benefits to all temporarily disabled employees except those whose disabilities were pregnancy related. In so doing, the Court refused to follow the EEOC guideline on the treatment of pregnancy related disabilities, 429 U.S. at 140–46, 97 S.Ct. at 410–12, and rejected the unanimous conclusion of all six Courts of Appeals that had addressed the question. 429 U.S. at 147, 97 S.Ct. at 413 (Brennan, J., dissenting).

From the EEOC's perspective, Gilbert was such an abrupt change in the law that it required a reevaluation of pending pregnancy related discrimination charges. The 88 charges against Indiana Bell in which the EEOC had issued "cause" letters of determination had to be reviewed. In March through June of 1977 the EEOC issued 28 identical letters, changing 28 of the previously issued "cause" letters of determination to "no cause" letters based on Gilbert. Bates Affidavit, ¶ 10; Indiana Bell Appendix, Ex. 19.

From June through September of 1977, the EEOC "administratively closed" nine of the 60 charges still pending against Indiana Bell. Bates Affidavit, ¶ 12; Indiana Bell Appendix, Ex. 23. The EEOC has not explained why the files were closed. In April of 1978, the EEOC issued the final two "cause" letters of determination against Indiana Bell. Bates Affidavit, ¶ 15. (The charges had been filed in September of 1976 and April[5] of 1977). In March of 1980, the EEOC sent Indiana Bell a final offer of conciliation, Spurlock Affidavit, Ex. 28, which Indiana Bell refused. Finally, in April of 1981, the EEOC filed suit against Indiana Bell based on the 53 charges in which the final EEOC action had been the issuance of a "cause" letter of determination.

---

**5.** Although the charge was filed in April, it was not notarized until September of 1977. Indiana Bell Appendix, Ex. 31.

As the above summary of the record shows, contrary to the EEOC's claim, the EEOC did not need from early 1976 until April of 1981 to investigate, make determinations, attempt conciliation and file suit. The only evidence of investigation after 1975 is several letters the EEOC sent Indiana Bell requesting information, Indiana Bell's refusal to supply the information, and two brief letters sent by Indiana Bell to the EEOC on April 19, 1978.[6] Conciliation efforts also took minimal time because Indiana Bell steadfastly refused to conciliate, insisting that the courts determine the legality of its policies. Spurlock Affidavit, Ex. 13. The four page complaint filed by the EEOC in this cause is not long nor detailed enough to raise the inference that the EEOC spent much time preparing for suit. According to the record, the majority of the time the EEOC spent processing the charges was spent making determinations. Eighty-eight "cause" letters of determination were issued, then the charges were reevaluated[7] in light of *Gilbert,* then 28 amended "no cause" letters were issued. However, this does not justify the delay. Most of the letters were form letters. More importantly, all but two of the final letters of determination had been issued at least three years and ten months before the complaint was filed.

The EEOC is arguing that it was excusable delay for it to wait for Congress to respond to *Gilbert,* which Congress eventually did when it passed the Pregnancy Discrimination Act in October of 1978. The Court sees no reason, and the EEOC has advanced none, to explain why the passage of that act has any bearing on charges previously pending against Indiana Bell. Clearly the law that applies to the charges which form the basis of this complaint is the law announced by the Supreme Court in *Gilbert,* not the law as it stands today. The Pregnancy Discrimination Act was not a clarification of current law, as was *Gilbert;* it was a new law.

There is nothing else in the record, no internal documents, depositions, or affidavits, to explain why it took five years and four months to file suit after the national efforts failed. *Cf. EEOC v. Great Atl. & Pac. Tea Co.,* 735 F.2d at 83 (EEOC filed affidavits to account for the duration of the investigation). The most extensive activity was sending out letters of determination, and that was substantially finished three years and ten months before the complaint was filed. During that time period the record shows that the EEOC did virtually nothing. The delay in filing suit is clearly inexcusable.

The five year, four month delay in this case is comparable to the delay found inexcusable in other cases filed by the EEOC. *See, e.g., EEOC v. Dresser Industries, Inc.,* 668 F.2d 1199 (11th Cir.1982) (5 year, 8 month delay); *EEOC v. Alioto Fish Co.,* 623 F.2d 86 (9th Cir.1980) (5 year, 2 month delay); *EEOC v. Liberty Loan Co.,* 584 F.2d 853 (8th Cir.1978) (4 year, 4 month delay); *EEOC v. Martin Processing, Inc.,* 533 F.Supp. 227 (W.D.Va.1982) (4 year, 5 month delay); *EEOC v. Bray Lumber Co.,* 478 F.Supp. 993 (M.D.Ga.1979) (4 year, 5 month delay). Of course, parts of the total delay in filing suit are excusable because the EEOC is allowed a reasonable amount of time to process the charges. However, the practice in the courts has been to look at the total delay and determine whether it is excusable as a whole, rather than trying to break the delay into excusable and inexcusable segments. The Court has deviated slightly from this practice by excluding the national efforts period, but only because it

---

6. The letters stated that employees on maternity leave do not have the same benefits, seniority rights, and right to return to previous position as do employees on sickness disability. The second letter superseded the first letter of the same date. Spurlock Affidavit, Exs. 25 and 26.

7. Contrary to Indiana Bell's argument, the reevaluation was necessary. It would have been irresponsible of the EEOC to file a complaint charging sex discrimination based on acts the highest court in the land had said would not support such a charge.

is a distinct and separable time period that is clearly excusable.

A comparison of the five year, four month delay in this action with the state statute of limitations for the most comparable cause of action also supports the holding that the delay in this case is inexcusable. As the EEOC has pointed out, no federal nor state statute of limitations applies in this case. *Occidental Life, supra.* However, Indiana Bell has correctly argued that, in a standard laches analysis, courts look to statutes of limitations for comparable actions as guidance in determining how long of a delay is reasonable. *Holmberg v. Armbrecht,* 327 U.S. 392, 396, 66 S.Ct. 582, 584, 90 L.Ed. 743 (1946); *Goodman v. McDonnell Douglas Corp.,* 606 F.2d 800, 804 (8th Cir.1979), *cert. denied,* 446 U.S. 913, 100 S.Ct. 1844, 64 L.Ed.2d 267 (1980). In Indiana, the most analogous statute of limitations is the two-year statute applying to claims for personal injuries. *Cf. Movement for Opportunity & Equality v. General Motors,* 622 F.2d 1235, 1241–44 (7th Cir.1980) (holding that Indiana's two year personal injury statute of limitations was applicable in a 42 U.S.C. § 1981 suit alleging race discrimination in employment practices). The Supreme Court's decision in *Wilson v. Garcia,* 471 U.S. 261, 105 S.Ct. 1938, 85 L.Ed.2d 254 (1985) (holding that courts should use the respective state statutes of limitations governing personal injuries for all discrimination actions under 42 U.S.C. § 1983), also supports reference to the two year statute of limitations. (It does not compel the analogy, however, because this is not a § 1983 suit.) The delay in this case is three times the delay allowed by the analogous statute of limitations, a strong indication that the EEOC's delay was unreasonable.

The Court realizes that this case involved a large number of charges which were submitted to the local EEOC office within a short time period (most of them when the national conciliation efforts failed) and acknowledges that it should take the EEOC longer to process 88 charges than to process one charge. However, if the EEOC anticipated filing suit, it had the responsibility to do so expeditiously. The case was almost four years old when it came back from the national office. Employment matters are such that Congress has decided they should be handled quickly.[8] Employment situations are in a constant state of flux, particularly in a large company, which makes it more difficult to fashion an appropriate remedy as time passes. Also, as with any other case, as time passes, witnesses move and/or change jobs, and their memories fade.

Unfortunately, the EEOC apparently put the case on the back burner for at least part of the time it was pending. What little action the EEOC took certainly did not occupy the EEOC's time for a substantial portion of the five year, four month delay. In fact, virtually no action was taken in the final three and one-half years before suit was filed. The Court will not say that any given length of time is *per se* inexcusable, but the EEOC has not explained why it took five years and four months to file suit after the charges came back from the national offices. The delay in this case is inexcusable. In so holding, the Court draws support from other EEOC cases where courts have found an unrea-

---

**8.** This policy is evidenced by the statutory guidelines governing the EEOC's actions in employment discrimination suits.

Whenever a charge is filed by or on behalf of a person claiming to be aggrieved, ... alleging that an employer ... has engaged in an unlawful employment practice, the Commission shall serve a notice of the charge ... *within ten days,* and shall make an investiga-

tion thereof.... If the Commission determines after such investigation that there is reasonable cause to believe that the charge is true, ... [t]he Commission shall make its determination on reasonable cause *as promptly as possible* and, so far as practicable, *not later than one hundred and twenty days* from the filing of the charge....

42 U.S.C. § 2000e–5 (emphasis added).

sonable delay and from the comparable two-year state statute of limitations.

### B. *Undue Prejudice*

Undue prejudice to the defendant as a result of the delay in filing suit is the second element of the affirmative defense of laches. *Massey-Ferguson,* 622 F.2d at 278. The longer the plaintiff delays in filing suit, the more likely it is that prejudice has occurred and, therefore, the less prejudice the defendant must prove. *Goodman v. McDonnel Douglas Corp.,* 606 F.2d at 807. As is to be expected, the delay in filing suit has caused the unavailability of witnesses, faded memories, and changes in personnel, three traditional elements of prejudice. *EEOC v. Dresser,* 668 F.2d at 1203; *EEOC v. Liberty Loan,* 584 F.2d at 858. As discussed below, this prejudice has manifested itself primarily in the loss of supervisors' and upper management testimony and changes in personnel at Indiana Bell. The evidence shows that Indiana Bell has been unduly prejudiced.

In determining what prejudice Indiana Bell has suffered, the Court has distinguished between those prejudicial events caused by the nine year delay before suit was filed and those caused by the four year period after the complaint was filed and before the defendant moved for summary judgment. "Difficulties caused by the pendency of a lawsuit, and not by delay in bringing the suit, do not constitute prejudice within the meaning of the laches doctrine." *Shouse v. Pierce County,* 559 F.2d 1142, 1147 (9th Cir.1977). Even though something, such as the death of a witness, occurs after the law suit is filed, the prejudice may still be caused by the delay in filing suit because the death would not

have affected the trial if the case had been filed within a reasonable time period. In this case, the delay in filing suit was so long that, with one exception, the Court will assume that any prejudicial event was caused by the EEOC's delay in filing suit. After suit is filed the defendant is put on notice that it needs to preserve evidence necessary for its defense. If the defendant fails to preserve testimony after the complaint is filed, then the prejudice caused thereby is the result of the defendant's action and the pendency of the suit rather than a result of the delay in filing the complaint. Therefore, such prejudice will not be considered by the Court.

### 1. *Loss of Supervisors' Testimony*

At the time the complaint was filed, only 53% of the charging parties' immediate supervisors [9] still worked at Indiana Bell.[10] Approximately 25% of the supervisors resigned, retired or went to another company before the complaint was filed. Information is not available from Indiana Bell's records concerning 22% of the immediate supervisors. "[A] company 'should not be held responsible for the intervening deaths, retirements, voluntary and involuntary terminations, which normally occur with the passage of time.'" *EEOC v. Dresser,* 668 F.2d at 1203 (quoting *Boone v. Mechanical Specialties,* 609 F.2d 956, 959 (9th Cir. 1979)). Indiana Bell need not show that potential witnesses are unavailable to show that it has been prejudiced. "It is enough that the [defendant] 'face[s] the hardship of locating the former employees and procuring their testimony....'" *Jeffries v. Chicago Transit Auth.,* 770 F.2d 676, 681 (7th Cir.1985) (quoting *EEOC v. Liberty Loan,* 584 F.2d at 858). Indiana Bell was

**9.** "Immediate supervisor" refers to a charging party's supervisor at the time the party requested maternity leave.

**10.** Unless otherwise noted, statistics on the status of immediate supervisors were calculated from the information in Exhibit 38 in Indiana Bell's Appendix. Only 51 of the 53 charging parties whose charges form the basis of this

complaint are listed in Exhibit 38. For 11 of the charging parties (approximately 22%), Indiana Bell cannot determine from its records the status of their immediate supervisors. The Court has assumed that these supervisors did not work at Indiana Bell when the complaint was filed and are not working at Indiana Bell now.

not required to "foretell the future" and secure statements from witnesses before they became unavailable. *Dresser*, 668 F.2d at 1203 n. 11. *But see Howard v. Roadway Express*, 726 F.2d 1529, 1533–34 (11th Cir.1984).

The Court is only considering the prejudice that Indiana Bell would have faced at the time suit was filed, when 53% of the immediate supervisors still worked at Indiana Bell, rather than looking at the situation in 1985 when the summary judgment motion was filed and only 24% of the supervisors were still employed there. Once the suit was instituted, Indiana Bell was put on notice that it needed to preserve testimony for its defense. When faced with the departure of an immediate supervisor after the complaint was filed, Indiana Bell should have either taken the supervisor's deposition or kept in contact with her so she could be called at trial. To hold otherwise would both encourage defendants with a possible laches defense to drag their feet before trial and discourage them from taking reasonable actions to preserve evidence in their favor.

The immediate supervisors who still worked at Indiana Bell when the complaint was filed have substantially faded memories. The events in question happened between nine and fourteen years ago. Common experience tells us that most people will have great difficulty remembering those events, especially because they were part of every day business life rather than some momentous occasion. Just in case the Court had any doubt about how little the supervisors would remember, Indiana Bell has submitted affidavits from two immediate supervisors who are still employed by Indiana Bell. One affiant explains the situation as follows:

> [D]ue to the passage of time, I do not have any present recollection of details surrounding the maternity leave application submitted by Janet Harris, nor do I remember any details with respect to

whether, and if so when, Ms. Harris requested to return to work. Furthermore, I do not remember details of other maternity leave applications that I reviewed and recommended for approval during the period of time I was a first level supervisor.

Cooper Affidavit, ¶ 6. There is no reason to believe that any other immediate supervisor will have a significantly greater recall of the events in question. Courts have consistently relied on faded memories of events long past to find the prejudicial element of laches. *See, e.g., EEOC v. Martin Processing*, 533 F.Supp. at 232 (6 year delay); *EEOC v. Bray Lumber*, 478 F.Supp. at 998 (4½ year delay); *EEOC v. Bell Helicopter Co.*, 426 F.Supp. 785, 793 (N.D.Tex. 1976) (9 year delay). Furthermore, with respect to the faded memories, Indiana Bell has not failed in its duty to preserve evidence. The immediate supervisors' memories may not have been any better in 1981 than they are now. Even if they were, a defendant is not required to take depositions of *all* potential witnesses at the beginning of litigation.

This combination of unavailable witnesses and faded memories makes it extremely difficult for Indiana Bell to defend itself based on the implementation of its policies in any given instance. The EEOC has argued that the immediate supervisors' testimony is immaterial to Indiana Bell's ability to conduct its defense because "[t]here is no evidence that supervisors created these [pregnancy related] policies." EEOC's Response Brief at 19. It is uncontested that immaterial prejudice cannot be used to establish laches. However, the EEOC's argument fails because the policies' implementation, as well as their creation, is at issue.[11]

The immediate supervisors' testimony is crucial because they played a key role in the implementation of the pregnancy policies. The employee's immediate supervisor

---

**11.** *Cf. EEOC v. Alioto Fish*, 623 F.2d at 88 n. 3 (unavailability of witnesses held prejudicial because it deprived defendant of opportunity to rebut statistical evidence).

normally recommended an application for maternity leave and was the employee's main contact with Indiana Bell while on said leave. In Indiana Bell's words,

> the immediate supervisor of an employee on maternity leave ... would be a crucial witness as to circumstances and reasons relating to the commencement of the maternity leave, when the employee requested reinstatement, what job openings were available, what jobs were offered the returning employee, when each such job was offered, what positions and locations the employee was willing to accept and her qualifications, whether and when the employee requested to extend her leave, what reasons the employee gave for requesting an extension, etc.

Indiana Bell's Brief at p. 16. The unavailability and faded memories of immediate supervisors has unduly prejudiced Indiana Bell.

### 2. Changes in Work Force and Personnel Structures

Advances in technology and the court-ordered break-up of AT & T have caused drastic changes in Indiana Bell's personnel structure and significant reductions in its work force since the initial charge was filed in 1972. Also, as is to be expected in any large corporation, Indiana Bell has experienced a significant employee turnover since 1972. The following statistics reflect these changes. Sixty percent of the Indiana Bell operators were transferred to AT & T in 1983, Indiana Bell Appendix, Ex. 43, and 60% of the charging parties were operators. Indiana Bell Appendix, Ex. 38. The number of employees has decreased more than a third from a high in 1979 of 11,718 to a low in 1984 of 7,423. Indiana Bell Appendix, Ex. 45. As a result of the court-ordered break-up of AT & T, more than 1,000 employees retired in 1982 and 1983, which is more than twice the number that retired in 1980 and 1981. Indiana Bell Appendix, Ex. 44; Junker Affidavit, ¶ 5. Indiana Bell has closed 99 offices in Indiana since July of 1973. Indiana Bell Appendix, Ex. 50; Turner Affidavit, ¶ 12.

A particularly important change in the work force is that approximately 40% of the charging parties are no longer employed by Indiana Bell. Included in this group are one woman who died two years and three months before the complaint was filed, one woman who retired four years and five months before the complaint was filed, and another woman who resigned six years and ten months before the complaint was filed. Shelton Affidavit, ¶ 15.

The EEOC has not disputed these statistics, but claims they are immaterial. The EEOC's argument is partially correct; changes in personnel structure, etc. are immaterial to the issue of whether Indiana Bell's maternity related policies were discriminatory. However, these changes are material to the issue of the damages due each individual charging party, which appears to be the major, and perhaps only, relief the Court would be able to grant in this case.[12] The passage of time has made it very difficult to prove the continuation of any loss of wages, the extent to which charging parties mitigated damages, and the effects of continuing loss of seniority or possible promotions. The changes in personnel structure, the court-ordered break-up of AT & T, the reduction in work force, and the large number of charging parties who have left Indiana Bell have exacerbated the problems in proof wrought by the passage of time and compounded the undue prejudice Indiana Bell would suffer if forced to defend itself.

### 3. Loss of Management Testimony

Indiana Bell is also claiming prejudice because "almost all the necessary manage-

---

12. Although the Court is not deciding the issue at this time, it appears that neither declaratory nor injunctive relief concerning the legality or continuation of Indiana Bell's policies would be helpful to the charging parties. Certainly the 40% of the charging parties who have left Indiana Bell would gain nothing from this type of relief. Even those who remain have little to gain because the situation has changed significantly since the charges were filed. The policies about which the charging parties complained were changed in 1977 and in 1979. Furthermore, the law changed significantly with the passage of the Pregnancy Discrimination Act, which became effective in 1979.

ment level witnesses are no longer with Indiana Bell." Indiana Bell's Response Brief at 47. Although the affidavits cite numerous management level employees who have left Indiana Bell, Indiana Bell's argument centers on the absence of five key management witnesses who have retired and one who has died since the complaint was filed in this cause. Three of these management witnesses were on the Employees' Benefit Committee, which reviews for approval all sickness disability cases, applications for death benefits, retirements, and applications for and extensions of leaves of absence, including maternity leaves. Shelton Affidavit, ¶ 4. The three key members of this committee who retired after the complaint was filed are the Secretary from 1972 through 1984 (responsible for conducting meetings and preparing minutes), the Assistant Secretary from 1966 through 1982 (responsible for conducting meetings in the Secretary's absence), and the Medical Review Director from 1972 through 1977 (responsible for determining whether an employee is physically fit to return to work after a disability leave). Shelton Affidavit, ¶ 4. The other three potential management witnesses, who were involved in handling charges filed with the EEOC, are P.B. Ewing, who was the first official conciliator for EEOC charges and died in 1984; Jess Overman, who was Ewing's replacement and the person responsible for all formal charges filed with the EEOC after August of 1973 and had a heart attack and retired in 1982; and John Guedel, who was Overman's supervisor and Assistant Vice President in personnel and retired in 1983.

The prejudice, if any, that Indiana Bell has suffered by having management level witnesses retire after the complaint was filed is not prejudice attributable to the EEOC's unreasonable delay in filing suit. Once the complaint was filed, Indiana Bell was put on notice that it had to preserve evidence on its behalf. When potential witnesses retired after the suit was filed, Indiana Bell should have taken their depositions or maintained contact with them so they could be called to testify at trial.

However, unlike retirement, death usually is unforeseeable. Therefore, the death of the potential witness Ewing is prejudicial even though it occurred after the complaint was filed. *See Jeffries*, 770 F.2d at 680 (Seventh Circuit cited as prejudicial the loss of the personnel director, who died after the district court granted summary judgment on laches).

Even though the retirement of management level witnesses is not prejudicial, Indiana Bell has been prejudiced in its attempt to obtain evidence from most of these witnesses. Whether they still work at Indiana Bell or have retired, management level employees are bound to have faded memories just like any other potential witness. (See discussion, *supra*, p. 125).

#### 4. *Loss of Documents*

Indiana Bell is claiming prejudice because, before this suit was filed, numerous critical records concerning the unnamed members of the class were destroyed pursuant to Indiana Bell's document management policy. The EEOC argues that the destruction of these records is not prejudice caused by the delay because the EEOC notified Indiana Bell before the documents were destroyed that the EEOC was considering a class action, and therefore, EEOC regulations required Indiana Bell to retain the documents at issue. The Court will not decide this issue. The unavailability of witnesses, faded memories, and changes in personnel structure have already more than established the necessary undue prejudice for laches. There is no need to determine whether Indiana Bell was justified in destroying the records.

### III. CONCLUSION

■ It is unfortunate that a case must be dismissed before the merits of the plaintiff's claim are reached, particularly in a case as important as an employment discrimination class action suit. However, our judicial system was designed not only to right wrongs, but to do so fairly and equi-

tably. It would be neither fair nor equitable to allow a plaintiff to proceed with a suit when the plaintiff has unreasonably delayed in filing the suit, and thereby made it difficult, if not impossible, for the defendant to defend itself thoroughly. The affirmative defense of laches embodies this principle of not allowing a plaintiff to benefit from his own inaction. Laches has two elements—inexcusable delay by the plaintiff and undue prejudice to the defendant. Both are present here.

The EEOC did not file the complaint in this cause until nine years after the first charge of pregnancy-related sex discrimination by Indiana Bell was filed with the EEOC. The plaintiff cannot be faulted for the first three years and eight months of this delay. During that time, the parties were attempting on a national level to settle their differences. Time spent attempting to settle a case is excusable delay. To hold otherwise would seriously undermine the strong Congressional policy establishing settlement, rather than litigation, as the preferred method of resolving employment disputes.

Following the national settlements effort period, however, was five years and four months of inexcusable delay. During this time period, the EEOC sent out letters of determination and attempted to investigate and conciliate the charges. However, nothing in the record indicates that the EEOC was actively pursuing this case during those five years and four months. The most telling point, perhaps, is that the EEOC took virtually no action for three and one-half years on charges that were already up to five and one-half years old and aging more with each passing day. The length of time combined with the minimal action taken by the EEOC clearly result in an unreasonable and inexcusable delay.

Before the EEOC filed the complaint in this cause, many potential witnesses had left Indiana Bell's employ, Indiana Bell's personnel structure and work force had changed drastically, and most, if not all, potential witnesses, had substantially faded memories. All of these changes unduly prejudiced Indiana Bell in its ability to defend this suit. Most significantly, Indiana Bell has lost the ability to defend itself based on the implementation of its pregnancy policies in each specific instance because the delay in filing suit caused the loss of much of the testimony of the charging parties' supervisors. The delay has also made it very difficult to determine appropriate damages for individual charging parties because the personnel structure and work force at Indiana Bell have changed dramatically. Faded memories undoubtedly will cause many problems.

Indiana Bell has proven the two elements of the affirmative defense of laches. The EEOC inexcusably delayed in filing this suit and the delay has caused Indiana Bell undue prejudice. Therefore, this Court must grant Indiana Bell's motion for summary judgment and dismiss the EEOC's case against Indiana Bell.[13]

13. The EEOC is free, of course, to investigate charges against Indiana Bell based on their current policies and to file a complaint based on a recent charge if the EEOC determines that current policies are discriminatory.